M’Girk, C. J.,
delivered the opinion of the Court.
This was an indictment for obtaining bills of exchange by false pretences.
There are three counts in the indictment, for thiee several and distinct offences.. To this indictment there was a general demurrer, and the demurrer was, by the Court, sustained, and judgment for the defendant; to reverse which, is tile object of the present writ of error.
The assignment of errors is general. To sustain the. judgment of the. Circuit Court, two points are made by the counsel for Newell.
First. That the obtaining of bills of exchange by false pretences, is not within the statute on which he is indicted.
And secondly. The pretences by which they are said to have been obtained, are not such as contemplated by the statute, and that they are not well described..
*178 The words of the statute on which this indictment seems to "be predicated, are: “If any person or persons, knowingly and designedly, by any false pretence or pretences, obtain from any other person or persons, moneys, goods, or merchandise, or effects whatever, with intent to cheat or defraud such person or persons of the same, he shall, on conviction,” &c.
The fiist question is, will the word “ effects” embrace a bill of exchange? This appears to be a question of construction. The design of the Legislature seems to have been to embrace every kind of case; they, therefore, after mentioning all sorts of personal things in possession, say, or effects whatever; no doubt intending to embrace something more than money, goods, or merchandize. By name, effects will embrace lands, tenements, &c. Effects in law must mean every thing which is subject to the laws of property and ownership, whether real or personal; and of the personality, whether of possession or in action. A bill of exchange is not money, but is a security for money, because it contains the proof that money is due, and a promise to pay it. It is also a species of merchandize, or rather answers the end of money, in passing like money. It is effects, within the meaning of the statute ; and this Court have already decided, that promissory notes are effects; (see the case of the Bank of Missouri v. Douglass).
But it is said, these bills are not effects; till they have passed out of the hands of the drawer. My opinion is, that if A., by false pretences, cheats B. into making a bill of exchange, to be delivered to him, and to be used by him, that this is cheating B. of effects, or meins of living. The statute was made to prevent the wicked and cunning part of mankind from preying on the less wicked and cunning; to protect the unwary; to be the guardian of the ignorant and unwise. The end and the means by which the fraud is effected, is perfectly immaterial. Experience has shown that men grow cunning in new devices as speedily as law can be made to prohibit the old. The statute, therefore, uses general words, and prohibits the act to be done, without regarding the means by which it is effected.
The case of The King v. Phips, from 2 East’s Crown Law, 599, has been relied on. That was a case whore a statute punished robbery of promissory notes, being the property of any other person than the robber’s, &c. Phips was indicted under this statute. The case turned out to be, that the prisoner had, by threats of death, compelled the person to make the note and to deliver it. There the question was, whether this was the property of another, within the statute. The Court held, it was not a robbery of a promissory note, but a procuring a note by duress, and that the duress was the principal part of the transaction. That offence was not quite like the offence here charged, and the case of Phips is not exactly in point.
Here, the charge is, obtaining effects by fraud, and no question is made about duress or force; but slill the question is made, could these bills be of any value while they remained iii the possession of the prosecutor ? The answer is, that if they never had been delivered, they never would have been of value. But the inducement which the prosecutor had to make and deliver them, was false and fraudulent; he made and delivered the bills, which created a liability, and this liability affecte'd his means of living, or his rights, in a high degree.
If the bills passed from Newell, Orton could not even avoid them, in the hands of innocent holders. The object of the statute was, to throw a mantle of protection round men’s rights, whether in possession or action. Here, by false pretences, a *179 right or chose in action has been obtained; it is an effect, and the transaction is, in an eminent degree, the object of criminal law.
'And this opinion, as to the exposition oí “ effects,” is not singular to this Court. The case came up directly, in the Court of Exchequer Chamber, before the twelve Judges. The case is the King v. Arbett, reported in 2 Leach’s Crown Cases, 958, decided in 1808.
The indictment is upon the statute of 15 G. 2; the statute enacts, <e that if any officer or servant of the Bank, being intrusted with any note, bill, dividend, warrant, bond, deed, or any security money, or other effects belonging to the company, shall secrete, embezzle, or runaway with such note, effects, &c., he shall be guilty of felony, &c. The prisoner was clerk, and charged with embezzling exchequer bills bought by the Bank; but the bills were not signed by the right person, and so not good, as such. The question was, were they effects of the Bank ? It is pro-qrer to remark here, that the prisoner had been indicted under said act, for embezzling the bills, as exchequer bills, and discharged because the bills were not signed by the right person, and so they were not exchequer bills; and then the question, on the second indictment was, were they effects ?
Lord Alvanly, Chief Justice, in delivering the opinion of the twelve Judges, says (p. 972, 2 Leach’s Cr. Cases,) “ they are effects. This word is of a very comprehensive signification; it is not, in its legal acceptation, confined to any particular description of property, either in kind or in value, and was probably intentionally used by the Legislature, with a view to throw every possible protection round every possible species of property, which the Bank could possess. But whether considered as .effects or securities, or mere papers, they are certainly valuable; for they give the legal holder a right and title, which cannot be defeated, to call on government to pay the monies they were intended to secure.”. And the Court use an instance to show, that if an executor found these papers among the papers of his testator, and should destroy them, he would be guilty of a devastavit, and say, that these papers would be valuable effects of the testator. And so the Judges held, that the case was within the statute, and the prisoner was convicted.
We come, in the second place, to consider, whether the pretences set forth in the indictment, are such as contemplated by the statute.
The first count charges, that Newell represented to Orton, that he possessed four valuable negroes, and that he would let him have two of them for bills of exchange on Philadelphia; and that, in consequen.ee of this representation, the hills were drawn by Orton. And then the count charges, that this representation was made knowingly and designedly, and with intent to cheat Orton of his drafts; and that, in fact, Newell possessed no such slaves as he pretended to have. The demurrer admits all this to be true, but the defendant’s counsel says, this representation ip but a breach of contract.
The statute says, “ if any person, knowingly and designedly, by any false pretence, obtains,” &c.
The first thing is, that there should be something false. If a person says he is the owner of four slaves, and in truth and fact is not the owner of four slaves — if this is not false, the word has no meaning. Newell had no slaves at all, therefore his .pretence was false. And again, this, falsehood should be used and coupled with a pretence. If a man tells a positive lie, the fact of lying, alone, is not a pretence within the statute; but the moment he uses that lie to effect an object to the disadvantage of *180 another, it is a false pretence 5 it is ail engine and means by .which he works. If a person assume a false argument or ground, it is a false pretence 5 and if it is done to cheat, and a cheat is actually effected, the words of the statute are satisfied. The first count is, therefore, well enough.
The second count in the indictment is also good ; but the third count is bad, for it alledges, that if the first drafts, drawn on Philadelphia, were returned protested, then Orton was to give Newell other drafts in place of them ; and then the count shows the drafts were returned protested. Then Newell was, hy agreement, entitled to other drafts. But the indictment charges, that Newell pretended he had paid them, ■and Orton was discharged therefrom. This last might have been false, yet Newell, -by the agreement, entitled to other drafts, which he obtained. The most that can he •said of this pretence, is, that it was an unnecessary lie.
If there is fraud in this last transaction, it is in Newell selling the drafts for money, instead of sending them to the drawees, and, on the return and protest, delivering them to Orton before he obtained new drafts ; for, as the matter stands, Orton is still liable to the holders, and has parted with a like sum in other drafts ; but this matter is not charged hy the ihird count, so as to come within the statute.
The judgment of the Circuit Court, in sustaining the demurrer to the third count -of the indictment, is affirmed, and the said judgment, in sustaining the demurrer to the first and second counts of the indictment, is reversed; and the cause is remanded to the Circuit Court, and that Court is directed to overrule the defendant’s demurrer to the said first and second counts, and to enter judgment for tile Slate thereon, ■against the defendant Newell, unless the defendant will plead to the merits, at the next term of said Court.
■Jones, J.
'The peculiar circumstances attending this case in the Court below, could alone have induced this Court to give the defendant leave to plead: Eirst, the phraseology .of the judgment, which is, "that the indictment should be quashed,” and the de- > murrer overruled• and secondly, from the allegations of the counsel for the defendant 'which was admitted by the Circuit Attorney now in Court, that tho sufficiency of ithe indictment was argued in the Court below, on a ^notion by the defendant’s counsel to quash; and that that motion was, at the suggestion and by the direction of the Court below, turned into the shape of a demurrer,