State v. Phelan.

THE STATE v. PHELAN, Appellant.

**Division Two, December 18, 1900.**

**Indictment: "INDUCED TO SELL:" INSUFFICIENCY.** In an indictment for obtaining·horses by false and fraudulent representations, it is not sufficient to state that the prosecutors, believing said false pretense and false representation  so made as aforesaid by defendant to be true, and being deceived thereby, "were induced to then and there sell and deliver to said defendant said horses." The words "were induced to sell" do not amount to a positive, distinct averment that the prosecutors did sell and deliver said horses to defendant. Without proof that the defendant did sell and deliver the horses, the defendant could not be convicted; and the proof should not go beyond the indictment. In an indictment nothing material can be taken by intendment or implication.

Appeal from Vernon Circuit Court.—*Hon. H. C.*
*Timmonds,* Judge.

REVERSED.

*A. J. King* and *A. J. Smith* for appellant.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

GANTT, P. J.—The defendant was indicted, tried and convicted in the circuit court of Vernon county at the October term, 1899, and from that conviction appeals to this court. The indictment, omitting the formal parts, is as follows:

"The grand jurors for the State of Missouri, summoned from the body of the county of Vernon, now here in court

duly empaneled, sworn and charged to inquire within and for the body of the county of Vernon and State of Missouri, upon their oath do present and charge that one Walter Phelan, late of the county and State aforesaid, on or about the twenty-second day of September, A. D. 1899, at the county of Vernon and State of Missouri, then and there contriving, designing and intending to cheat and defraud Thomas Cain and Amanda Cain of their personal property, valuable things and effects, did apply to and request the said Thomas Cain and Amanda Cain to sell or trade him, the said Walter Phelan, certain personal property, valuable things and effects, and to induce the said Thomas Cain and Amanda Cain to sell or trade to him, the said Walter Phelan, said personal property, valuable things and effects, and to effect his said design and intent to cheat and defraud the said Thomas Cain and Amanda Cain, he, the said Walter Phelan, did then and there unlawfully, designedly, feloniously and falsely represent, pretend and state to the said Thomas Cain and Amanda Cain, that he, the said Walter Phelan, was then and there the owner of one-half interest in a livery stable and stock of horses in the town of Dexter, in Stoddard county, Missouri; that if the said Thomas Cain and Amanda Cain would sell or trade to him, the said Walter Phelan, among other personal property, valuable things and effects, then owned by and in the possession of the said Thomas Cain and Amanda Cain, one team of horses, to-wit, one bay mare seven years old, of the value of fifty dollars, and one bay mare about ten years old, of the value of fifty dollars, of the aggregate value of one hundred dollars, that he, the said Walter Phelan, in exchange for said horses, would give to them, the said Thomas Cain and Amanda Cain, horse for horse, out of his, Walter Phelan's livery stable in the town of Dexter, Stoddard county, Missouri; that

his, Walter Phelan's horses in said livery stable in Stoddard county, Missouri, were as good, if not better, and of more value than said team of horses of Thomas Cain and Amanda Cain; that as soon as Thomas Cain and Amanda Cain should arrive at the town of Dexter, Stoddard county, Missouri, that he, the said Walter Phelan, would deliver to them, the said Thomas Cain and Amanda Cain, out of the livery stock aforesaid a team of horses as good or better than those of Thomas and Amanda Cain's; and that he, the said Walter Phelan, would make them, the said Thomas Cain and Amanda Cain, perfectly satisfied; and the said Thomas Cain and Amanda Cain believing said false pretense and false representations, so made as aforesaid by the said Walter Phelan, to be true and relying on the same and being deceived thereby, were induced by reason thereof to then and there sell and deliver to the said Walter Phelan the following personal property, to-wit, one bay mare seven years old, of the value of fifty dollars, and one bay mare about ten years old, of the value of fifty dollars, of the aggregate value of one hundred dollars, of the personal property of the said Thomas Cain and Amanda Cain; and the said Walter Phelan, by means of the false pretenses and representations, so made as aforesaid, unlawfully, feloniously and designedly did obtain and receive of and from the said Thomas Cain and Amanda Cain the personal property above mentioned, with the intent them, the said Thomas Cain and Amanda Cain, then and there to cheat and defraud; whereas, in truth and in fact, the said Walter Phelan was not then and there the owner of a one-half interest in a livery stable and stock of horses in the town of Dexter, Stoddard county, Missouri, and had no interest whatever in any livery stable and stock of horses in the town of Dexter, Stoddard county, Missouri, and did not give to them, the said Thomas Cain and Amanda Cain, horse for horse, for the horses by them delivered to

the said Walter Phelan, as so falsely represented by him, the said Walter Phelan, to the said Thomas Cain and Amanda Cain, as aforesaid, all of which pretenses and representations so made, as aforesaid, he, the said Walter Phelan, then and there well knew to be false, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Missouri."

The evidence tended to prove that defendant Phelan lived at Dexter, Missouri, and in 1898, had taken his wife to an infirmary at Nevada, Missouri, and was sojourning there during her treatment.

Thomas Cain and his wife, Amanda Cain, were the owners of a tract of land containing 80 acres in Vernon county. On December 3, 1897, the Cains made a trade with William Woods whereby they agreed in writing to make him a warranty deed to 40 acres of their land for $400, and Woods gave them his obligation to pay $400.

On September 14, 1898, Woods assigned this contract to defendant Phelan. Cain and his wife heard of the assignment and came to Nevada to see defendant about the matter. They met and after discussing the matter, made a trade with defendant whereby they exchanged their said farm to defendant for a farm owned by him in Stoddard county, Missouri. The deeds were executed and delivered in the office of the Messrs. McGinniss in Nevada, Missouri. Several days later they entered into a contract about the exchange and sale of the personal property of the Cains. The memorandum is in these words:

"Nevada, Mo., Sept. 22, 1899.

"This is to certify that whereas, Thomas Cain and wife have placed in my possession the farm, and household goods and stock enumerated in the above list, that I hereby agree to furnish them with duplicates of said listed goods

at second-hand prices, as nearly as possible, or being unable to do this I agree to pay them the value at second-hand prices in cash. This contract is to be carried out within thirty days from date at Dexter, Stoddard Co., Mo. I further agree to furnish said Thomas Cain and family of four with tickets from Nevada, Mo., to Dexter, Mo.

"Walter Phelan.

"Witness, H. W. James,

"McGinnis & Co."

Cain and wife and defendant selected their appraisers to test Cain's personal property and value it.

After this was done Cain sold a large part of this property with the consent of defendant, and kept the money.

They did not sell two horses which they owned. They brought these to Nevada and turned them over to defendant. Defendant purchased the necessary tickets to transport Cain and family to Dexter, Stoddard county, and they went to Stoddard. It seems that when they reached there, defendant went to Smith's livery stable to get them a team to replace the horses he got from them at Nevada. Smith did not have the kind of a team they wanted. Cain and wife went out and looked at the farm and were dissatisfied, and at once took steps to rescind their contract by which they exchanged farms with defendant and refused to confer further with him in regard to furnishing them a team.

They brought suit in the Vernon Circuit Court to rescind their trade and this indictment in this case seems to have been found in aid of the suit in equity.

The record is very voluminous. Indeed it appears to be greatly out of proportion to the single issue tendered by the indictment. Without encumbering this opinion with the

testimony in detail it is sufficient to state, for the purposes of our decision, that the largest part of the evidence was directed to an effort to show fraud and misrepresentation of the farm in Stoddard county, traded to Cain and wife by defendant. One reading the evidence without having read the indictment would conclude that defendant had been indicted for obtaining the farm of Cain and his wife and that the horse trade was a mere incident. An objection was made to the admission of all this evidence as to the character and value of the Stoddard county farm of the defendant, because defendant was not charged with any false pretense as to that and because the indictment did not advise him he was to meet such a charge, and the inquiry was immaterial and collateral to the charge on which he was being tried.

The learned judge, while overruling the objection, expressed the opinion that it was very doubtful evidence and that he was inclined to think he had committed error.

Various errors are assigned and will be examined in the discussion of the case.

I. If the objection to the indictment is good it will obviate a discussion of many minor points urged by the defendant.

At a very early period in the judicial history of this State it was held not sufficient to charge that the defendant falsely pretended, etc., setting forth the means used, and then to aver that by means of such false pretenses he obtained the property, but it was essential to aver and state such pretenses as the pleader intended or expected to prove on the trial were used and were false; that is to say, he must, as in an assignment of perjury, falsify by specific and distinct averments. [3 Chitty on Crim. Law, 999; 2 M. & S. 279; State v. Peacock, 31 Mo. loc. cit. 415-416; State v. De Lay, 93 Mo. 98.]

Accordingly, in State v. Bonnell, 46 Mo. 395, it was said by Judge WAGNER for the court: "Where the alleged false pretenses were injurious only by inducing another person to buy the cattle as to which such false representations were made, such sale, bargain, or agreement, which was the cause of the party advancing or parting with his money, should be set out as a part of the facts relied on, and as a material allegation in the description of the offense." [State v. Newell, 1 Mo. 248; Com. v. Strain, 10 Metc. 521.]

In State v. Saunders, 63 Mo. 482, the indictment was very similar to the one under consideration, and although it abounded in technical language, because it omitted to aver that the alleged false account *"was assigned"* by defendant to Sullivan, it was adjudged bad.

Now applying these familiar principles and decisions to the indictment before us, it will be noticed that after averring that defendant falsely pretended and stated to said Thomas Cain and Amanda Cain that if they would sell or trade to him "one team of horses, etc., of the aggregate value of one hundred dollars, he, the said defendant, in exchange for said horses would give to them horse for horse out of his, defendant's livery stable," etc. And the said Thomas Cain and Amanda Cain believing said false pretenses and false representations so made as aforesaid by defendant to be true and being deceived thereby, *"were induced to then and there sell and deliver to said defendant said pair of horses,"* etc.

The pleader does not go further and aver that he did in fact sell his said horses to defendant. Do the words "were induced to sell" amount to a positive, distinct averment that said Cains then and there did sell and deliver said horses to defendant?

On the trial the Cains were permitted to testify that they sold and delivered the horses to defendant.

Without this proof the conviction of defendant could not have been obtained. In State v. Saunders, 63 Mo. 482, this exact point was ruled by this court. In that case this court said: "It appears that both in the judgment of the trial court and the prosecutor, it was necessary for the State to prove and the jury to find that the account was purchased by Sullivan of defendant, and that payment was made therefor before the defendant could be convicted. If these were necessary facts to be established on the trial, and we think they were, then they should have been distinctly averred in the indictment by an affirmative allegation, and not by way of inference or argument."

And because in that case the pleader neglected to aver the account "was assigned to Sullivan and that he paid therefor," the judgment was reversed. The rule in criminal pleading is, "that in an indictment nothing material shall be taken by intendment or implication." [2 Hawkins, Ch. 25, sec. 61; State v. Meyers, 99 Mo. 116.] The phrase "induced to sell" signifies that the defendant "moved," "urged," "instigated" the Cains to sell to him, but it falls short of averring that they "did sell" to him.

The allegation should have been "were induced to sell and *did sell and deliver*" to defendant said horses. The false pretense was the inducement or motive to the sale, but unless it resulted in a sale the Cains would not have been deprived of their property.

In Commonwealth v. Lannan, 1 Allen (Mass.) 590, the court through Judge HOAR, says, "But, in the indictment before us, there is no direct averment that the prosecutor bought the horse, it is only stated that by means of the false pretenses set forth he '*was induced*' to purchase him,"

etc., and the judgment was arrested.   See also State v. Philbrick, 31 Maine, 401; People v. Gates, 13 Wend. 311; State v. Dillingham, 5 Ohio St. loc. cit. 283.

We are constrained to hold that as this is a criminal proceeding and nothing can be left to inference, and upon the weight of authority, the indictment is insufficient, and the motion in arrest should have been sustained.

As this necessarily requires a reversal of the judgment, it is unnecessary to note the exceptions to the admission of evidence and to the instructions given and refused further than to say that if this prosecution is continued the evidence should be confined to the charge in the indictment.   It took too wide a range on the trial and was well calculated to confuse the jury and prejudice the defendant's case.   [Com. v. Jackson, 132 Mass. 16; State v. La Page, 57 N. H. 245; Regina v. Holt, 8 Cox C. C. 411.]

The judgment is reversed and the prisoner and his sureties discharged from their recognizance.

*Sherwood* and *Burgess, JJ.,* concur.