## THE STATE v. HUBBARD, Appellant.

### Division Two, December 2, 1902.

1. **False Representation: VALUE OF SECURITY: CATTLE.** Courts will take judicial notice that steer cattle on a farm are of very much more than nominal value. And an indictment for obtaining money by false pretense by claiming to be the owner of twenty-two head of steer cattle, which defendant offered as security for a loan, will not be held bad because it does not allege what defendant represented the value of the cattle to be, nor because it does not state they were good security for the loan, and unincumbered. (Distinguishing State v. Barbee, 136 Mo. 440.)

2. ————: **DESCRIPTION OF THING NOT OWNED.** The indictment need not contain a definite description of the cattle·which defendant represented he owned and thereby obtained a loan on. Nor should there be any more definite description than is sufficient to state a false pretense under the statute. The pretense that defendant had twenty-two steer cattle was a sufficiently definite false statement to sustain an indictment. And his own description is sufficient. (Distinguishing State v. Stowe, 132 Mo. 199.)

3. ————: **DEFINITE MISREPRESENTATION.** It does not lie in defendant's mouth to complain because the person cheated did not require and exact of him a more specific false pretense.

4. ————: **INDUCED AND DID.** The indictment is not sufficient if it merely charges that the person cheated "was induced by said false pretense" to loan the defendant the money, but it must state that he "was induced to loan and did loan," etc.

Appeal from Hickory Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*Lay & Lay* for appellant.

(1)   The indictment is bad for the want of an allegation that defendant represented the value of the mortgaged cattle, or that they were good security for the loan, or unincumbered.   State v. Barbee, 136 Mo. 440.   (2) The failure of the indictment to more fully describe the cattle, loan and mortgage deprived defendant of his constitutional right to be informed of the "nature and cause of the accusation."   Constitution, art. 2, sec. 22; State v. Barbee, supra; State v. Stowe, 132 Mo. 199; State v. Murphy, 141 Mo. 267; State v. McLaughlin, 160 Mo. 33.   (3) The indictment is bad because it only alleges that Liggett "was induced by the false pretenses to loan the said Walter Hubbard" the money, and nowhere expressly alleges that he did lend it to him; in a criminal proceeding nothing can be left to inference.   State v. Phelan, 159 Mo. 122.

*Edward C. Crow*, Attorney-General, and *Jerry M. Jeffries*, for the State.

(1) The indictment alleges that Liggett was induced by false pretenses to loan the said Walter Hubbard five hundred and fifty dollars, and the charge is, "So made to the said W. H. Liggett as aforesaid, feloniously did obtain and receive of and from the said W. H. Liggett the sum of five hundred and fifty dollars."   Nothing is left to inference, and the case of State v. Phelan, 159 Mo. 122, in nowise conflicts with the indictment in this case.   The indictment is sufficient. State v. Frazell, 132 Mo. 176; State v. Turley, 142 Mo. 403; State v. Wilson, 143 Mo. 334; State v. Janson, 80 Mo. 97; State v. Smallwood, 68 Mo. 192.   (2) The indictment sufficiently describes the cattle.   The note and mortgage did not pertain to the false representations, but are the means by which the money was secured by defendant.   They are not the gist of the action, but the evidence of it.   The only mention in the indictment that need be made of the cattle is to describe them in kind and number sufficiently to make it appear to be an

inducement by which the Hickory County Bank was caused to part with its money, nor is it necessary that it should be described so as to make the false representation of them be the sole inducement by which defendant was given credit. It is enough that these representations have a controlling influence, and the evidence and the allegations in the indictment clearly show that they had that effect in this case. State v. Lowe, 93 Mo. 98; State v. Vorback, 66 Mo. 168; State v. Janson, 80 Mo. 97. The description of the property used as an inducement in the indictment in this case is as complete as that in a case which was affirmed by this court. State v. Vorback, 66 Mo. 116. The indictment charges that the defendant represented the cattle to be then on his father's farm in St. Clair county, Missouri; that they belonged to him, and that they were twenty-two in number. It would seem that this is sufficient to inform the defendant of the charge against him. A description of the property secured by the cheat or fraud is necessary in the indictment, but a description of the thing or property about which the false representations are made, is not necessary. Kelley's Criminal Law (2 Ed.), sec. 694; State v. Clay, 100 Mo. 582; State v. Flanders, 118; Mo. 227; State v. Alexander, 119 Mo. 447.

BURGESS, J.—The defendant was indicted, convicted, and his punishment fixed at four years in the penitentiary, under section 3564, Revised Statutes 1889, for obtaining $550 from the Hickory County Bank, through its president, W. H. Liggett, by means of false representations and pretenses.

The indictment charges that Walter Hubbard on or about April 22, 1898, at the said county of Hickory and State aforesaid, did, then and there, unlawfully, feloniously and designedly, with intent to cheat and defraud a certain private bank, organized under and by virtue of the laws of Missouri, to-wit, the Hickory County Bank, falsely pretend and represent to one W. H. Liggett, the president of said bank, that the said

Walter Hubbard was then the owner of twenty-two steer cattle, and that said cattle were then on the farm of his, the said Walter Hubbard's father in St. Clair county, Missouri, and the said W. H. Liggett, believing the said false pretenses and representations to be true, and being deceived thereby, was induced by the said false pretenses and representations, so made as aforesaid, to loan to said Walter Hubbard, upon a certain chattel mortgage, then and there executed by said Walter Hubbard, purporting to convey and sell to said bank, said steer cattle, to secure the payment of said loan, the sum of five hundred and fifty dollars, of the value of five hundred and fifty dollars, the money and property of said Hickory County Bank, and the said Walter Hubbard, by means of the false pretenses and representations aforesaid so made to the said W. H. Liggett as aforesaid, feloniously did obtain and receive of and from said W. H. Liggett the said sum of five hundred and fifty dollars, the money and property of said Hickory County Bank, with the intent him the said W. H. Liggett and it the said Hickory County Bank, then and there to cheat and defraud of the same: whereas, in truth and in fact the said Walter Hubbard was not then and there the owner of said twenty-two steer cattle on the farm of his father in St. Clair county, or elsewhere, and had no right to mortgage any such cattle, all of which the said Walter Hubbard then and there well knew, against the peace and dignity of the State.

Several objections are urged against the indictment. It is said that it is bad for the want of an allegation that defendant represented the value of the mortgaged cattle, or that they were good security for the loan, or unincumbered, and the case of the State v. Barbee, 136 Mo. 440, is relied upon as sustaining that contention. But there is a very material difference between the facts in that case, and the case at bar, in this: in that case, the indictment alleged that the defendant, in order to cheat and defraud the Farmers' Bank of Polo out of the sum of three hundred and twenty-

nine dollars and seventy-five cents, falsely and fraudulently represented that he was the owner of a certain promissory note on one William Watson, but did not allege the amount of the note or when due and payable or that the payor was solvent, and, upon these and other grounds, the indictment was held invalid. With respect to the "twenty-two steer cattle," which the indictment under consideration avers defendant represented he owned, and which were then on the farm of his father in St. Clair county, courts will take judicial notice that they were of very much more than a nominal value, while a promissory note in the absence of proof of the solvency of the maker has no pecuniary value as such. A statement or representation that a person is the owner of a certain number of steer cattle, made for the purpose of obtaining the loan of money, if believed, might readily induce the loan, because of the general knowledge that steer cattle have a pecuniary value much more than nominal, although their proximate value may not be known to the loanor, but no such rule prevails with respect to a promissory note in the absence of some evidence that the promisor is solvent. This point is therefore untenable.

It is also said that the indictment is invalid in that the description of the cattle therein is so indefinite that it deprived defendant of his constitutional right to be informed of the nature and cause of the accusation. In a word, the complaint is that because the indictment did not give a certain and specific description of the steer cattle, it is insufficient. We have already held that the description was sufficient to constitute a false pretense under the statute, and if we are right in that, surely the pleader was not required to state more.

Moreover, as the false representation was that defendant was at the time of making it the owner of twenty-two steer cattle, the pleader could not give any other or more definite description, as he was required to state the false pretense which defendant had used to procure the money and not another. Had he set forth

a specific description of twenty-two head of steer cattle by ages, colors, marks and brands it is plain the evidence offered of the actual false pretense would not have sustained the charge, but must have been excluded on proper objection, because a fatal variance from the averment in the indictment.

Neither can defendant complain that the indictment does not more particularly describe the steer cattle since it is his own description, nor does it lie in his mouth to find fault with the bank's officers because they did not require and exact of him a more specific false pretense but trusted him and loaned him the money on the false representation which he saw fit to make. He can not be allowed to say, "You trusted me on this representation, and because it was not specific I had a right to swindle you."

This pretense or representation does not fall within the class of cases in which it has been ruled that a pretense that is absurd on its face, or irrational, is not within the statute. [State v. Cameron, 117 Mo. 648; Buckalew v. State, 11 Tex. App. 352; Com. v. Grady, 76 Ky. 285.]

Thus the false representation that defendant had money on deposit in bank and his check would be paid on presentation, was held sufficient. [Smith v. People, 47 N. Y. 307.]

And it was further held that the court properly refused to charge the jury that the pretense must appear in the indictment to be such as could not be guarded against by an exercise of common sagacity and prudence.

In State v. Fooks, 65 Iowa 196, the representation by defendant was that his brother was soon to arrive in Iowa Falls and bring with him money for defendant without specifying the amount, and this was held to amount to a pretense that he had the money, and was sufficient. Numerous other cases might be cited to show that the pretense that defendant had twenty-two steer cattle was a sufficiently definite false statement to sustain an indictment.

But defendant relies upon the opinion of this court in State v. Stowe, 132 Mo. 199, wherein it is said by SHERWOOD, J., loc. cit. 204, that, "The indictment is vexatiously vague and indefinite in that it does not state, *a*, in what county the mortgage referred to was recorded, nor indeed, *b*, that it was recorded anywhere, nor, *c*, give the names of mortgagor and mortgagee, nor, *d*, the date of the mortgage, nor, *e*, the amount it was given to secure, nor, *f*, *a description of the horses mortgaged.*"

But it is obvious that the judge who wrote that opinion was not discussing at that time the sufficiency of Stowe's alleged false representation that the two certain horses "were free from all liens or incumbrances," but was considering the charge of the grand jury, "that in truth and in fact he the said Aretas Stowe was not then and there the real, legal and absolute owner of said two horses first above described but in truth and in fact there was a lien and an incumbrance on said two horses, that is to say, there was on the . . . 'day of September, 1892, a legal, valid and subsisting mortgage, unpaid and unsatisfied, on the two horses, the name of the mortgagee and mortgagor being unknown to these grand jurors, which he, said Stowe well knew," etc.

Proceeding the court says: "In the case at bar, the facts which constituted the lien and incumbrance on the horses are not so stated as to notify defendant and apprise him of what he was to meet at the trial. [State v. Trisler, 31 N. E. 881.] The allegation in regard to the lien and incumbrance amounts to no more than an untraversable legal conclusion, the mere inference of the pleader; but facts should have been alleged in order to enable the court to determine whether the mortgage was a valid lien."

The gravamen of the charge in that case was the false statement that there was no lien on the horses, but when the grand jury came to charge that there was a lien, it contented itself by merely stating that there was a mortgage, but that "the names of the mort-

gagor and mortgagee were to them unknown,'' and it was held that if the grand jury had exercised a modicum of diligence they could readily have ascertained a description of. the horses which Waugh, the prosecuting witness, received from defendant in exchange, and the records of Greene county would have revealed the names of the mortgagor and mortgagee alleged to be unknown. Accordingly it was ruled that it is not sufficient for a grand jury to allege that material and essential facts are to them unknown, when the facts are known or when they can readily be ascertained, and that ruling we think is fully supported on the weight of authority and all the principles of criminal pleading.    But that case is not authority for holding this indictment bad, because it did not aver a more specific description of the property which defendant falsely stated he owned.    In this case the pleader alleged all and the only description given by defendant and we hold it was sufficient to constitute a false pretense.    In the Stowe case, we were ruling on the utterly insufficient averments of the indictment wherein the grand jury was negativing the false pretense that there were no liens on the horses and their utter failure to state any traversable facts showing there was a valid lien thereon.

It is also contended that the indictment is bad because it only alleges that Liggett ''was induced by the false pretenses to loan the said Walter Hubbard'' the money, and does not expressly allege that he *did* lend it to him.    In State v. Phelan, 159 Mo. 122, an indictment which charged the defendant with obtaining horses by false and fraudulent representations by reason whereof the owners of the horses ''were induced to then and there sell and deliver to said defendant said horses,'' was held bad upon the ground that there was no distinct averment that the owners of the horses *did* in fact sell them to defendant.    The court said:   ''The allegation should have been, 'were induced to sell and *did sell and* deliver' to defendant said

Vol 170 mo—23.

'horses.'' [State v. Saunders, 63 Mo. 482.] So, in the case at bar, the indictment should have alleged, ''Believing the said false pretenses and representations to be true, and being deceived thereby, was induced by the said false pretenses and representations, so made as aforesaid, to loan, *and did loan* to said Walter Hubbard.'' . . . In Commonwealth v. Lannan, 1 Allen (Mass.) 590, the court says: ''But, in the indictment before us, there is no direct averment that the prosecutor bought the horse; it is only stated that by means of the false pretenses set forth, he *'was induced'* to purchase him.'' [Commonwealth v. Goddard, 4 Allen 312.]

For these considerations we must hold the indictment to be invalid. The judgment is reversed and the cause remanded.

All of this Division concur.