THE STATE v. BENNETT WARREN BOWDRY, *alias* C. W. HALE, Appellant.—145 S. W. (2d) 127.

Division Two, December 3, 1940.

*William J. Hough* for appellant.

1092

*Roy McKittrick,* Attorney General, and *W. J. Burke,* Assistant Attorney General, for respondent.

BOHLING, C.—Bennett Warren Bowdry appeals from a judgment imposing a sentence of two years' imprisonment for obtaining a $1543.76 check by means of false pretenses. He presents issues respecting the indictment, the evidence, argument and the instructions.

I. The indictment describes the parties, A. G. Edwards & Sons and Soffer, as their agent, and alleges that appellant, with felonious intent to defraud A. G. Edwards & Sons, represented to Soffer that appellant had met one Roth; that Roth had referred appellant to Soffer, etc.; that appellant had two $1,000 New York Central Railroad Company bonds which appellant desired Soffer, as agent of A. G. Edwards & Sons, to sell for him, and that said bonds (photostatic copies being set out) were genuine bonds of said railroad; that Soffer, as agent, etc., believing, relying upon and being deceived by said false, etc., representations was "induced to turn over and deliver to" appellant "a check and draft" for $1543.76. The indictment then proceeds:

"That the said Bennett Warren Bowdry, alias C. W. Hale, by means and by use of said trick, false and fraudulent representations, pretenses and statements and the aforesaid instruments purporting to be bonds of the New York Central Railroad Company, a corporation, obtained of and from the said Ben. B. Soffer, as such agent and employe and the aforesaid persons, doing business as A. G. Edwards & Sons, the aforesaid check and draft, with the intent then and there to cheat and defraud the aforesaid persons, doing business as A. G. Edwards & Sons of the said check and draft."

The conclusion alleges that appellant had not met Roth; that Roth had not suggested that appellant see Soffer and transact business with him, as agent aforesaid; that appellant did not have possession of two $1,000 bonds of said railroad which he desired Soffer, as agent, to sell for him, and that the bonds described in the charge were not genuine but counterfeit.

a. Appellant says the indictment did not state all facts necessary to disclose the causal connection. Article II, Sec. 22, Missouri Constitution, provides: "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation . . ." Appellant obtained the $1543.76 check because he delivered two purported $1,000 bonds of the New York Central Railroad Com-

pany to said A. G. Edwards & Sons to sell for him, the cause of the accusation; but this is not charged. [The testimony so established.] No logical reason exists for appellant obtaining said check merely because of representations he had met Roth, or Roth had referred appellant to Soffer, or appellant had said two $1,000 bonds, or because he represented said bonds to be genuine. The charge should be redrafted. [State v. Saunders, 63 Mo. 482, 484; State v. Bonnell, 46 Mo. 395; State v. Block, 333 Mo. 127, 131[2], 62 S. W. (2d) 428, 429[2]. See also, State v. Whedbee, 152 N. C. 770, 67 S. E. 60, 27 L. R. A. (N. S.) 363; State v. Fisher, 79 Utah, 115, 8 Pac. (2d) 589.]

b. Appellant also argues that the charge that Soffer, as agent aforesaid, was "induced to turn over and deliver to" appellant said "check and draft" does not charge that Soffer "did deliver" to appellant said "check and draft." State v. Phelan, 159 Mo. 122, 128, 60 S. W. 71, 73; State v. Hubbard, 170 Mo. 346, 353, 70 S. W. 883, 885, and State v. Kelly, 170 Mo. 151, 70 S. W. 477, support appellant's position. In the Phelan case the court held a charge that Thomas and Amanda Cain "were induced to then and there sell and deliver to" defendant certain horses was not a charge that said victims did "then and there sell and deliver" said property to defendant. The court reasoned: "The rule in criminal pleading is 'that in an indictment nothing material should be taken by intendent or implication.' . . . The phrase 'induced to sell' signifies that the defendant 'moved,' 'urged,' 'instigated' the Cains to sell to him, but it falls short of averring that they 'did sell' to him. The allegation should have been 'were induced to sell and *did sell and deliver*' to defendant said horses." The indictment in the Hubbard case was similar and the Phelan case was followed. The opinion in the Kelly case does not set out the indictment, but it follows the Phelan and Hubbard cases. The Phelan case does not discuss the effect of an additional charge in said indictment that defendant, by means of the false pretenses, etc., "did obtain and receive of and from" said Cains said personal property. So, too, with respect to the indictment in the Hubbard case. The indictment in the instant case not only charges that Soffer, as agent, was "induced to turn over and deliver to" appellant said check, but also (as hereinbefore set out) that appellant by means of said false representations "obtained" from Soffer, as agent, said check. To "obtain" means "to get hold of by effort; to get possession of; to procure; to acquire, in any way." Webster's New International Dictionary. To allege that one, by reason of specific representations by another, was induced to "turn over and deliver" to said other certain property and in addition to allege that by means of said representations said other "obtained" said property from the one (that is, got possession of it, et cetera) is to charge in substance and effect, giving language its commonly and reasonably understood meaning, that the one not only was induced

to but did turn over and deliver to the other and that the other did obtain the property referred to. The Phelan case and the cases following it should not be followed in so far as they are out of harmony herewith.

II. A. G. Edwards & Sons were bond dealers and brokers of St. Louis, Missouri, with connections in New York City. Soffer, an employee, acted as their authorized agent in the transaction involved. August 25, 1938, appellant introduced himself to Soffer, in St. Louis, as C. W. Hale and stated he had been referred to Soffer by a Mr. Roth of California. Soffer had known Roth. Appellant told Soffer he had five $1,000 New York Central Railroad Company bonds he wished to sell and presented what purported to be such bonds. Soffer wired New York for the quotation on the bonds, which he obtained and gave to appellant. Appellant complained of the price but decided to sell two of the bonds at the quoted price and to leave the other three for future disposition. Soffer wired the New York office, giving the number and maturity date of the bonds and asked if they were "O. K." and if there were any "stop orders" against them, and received a reply, by wire, that "these particular numbered bonds" were O. K. Soffer effected a sale of two of the bonds and paid appellant, by check of A. G. Edwards & Sons, the proceeds of the sale, $1,543.76. Appellant deposited the check in a St. Louis bank and secured the money. The bonds sold, as well as the three left for future sale, turned out to be clever forgeries or counterfeits of the genuine bonds.

We understand appellant was apprehended in Tulsa, Oklahoma, was returned to St. Louis, and, while under arrest and in custody in St. Louis, was questioned concerning the transaction. He answered questions with respect to his name, age, residence, and his participation, under the name of C. W. Hale, in the transaction with A. G. Edwards & Sons. When asked whether he knew the bonds were fraudulent or not, he replied that he did not care to answer; that he did not want to incriminate himself or someone else, and throughout the questioning refused to state from whom be obtained the bonds.

Appellant asserts the testimony with respect to his refusal to answer and the argument of the State's attorney based directly thereon violated his constitutional rights against self-incrimination. The State contends that when appellant answered certain questions directed to him, although under arrest, the whole conversation was admissible, citing State v. Hardin, 324 Mo. 28, 35(VI), 21 S. W. (2d) 758, 761[4]; State v. Capotelli, 316 Mo. 256, 263, 292 S. W. 42, 45[5]. These cases treat of outright admissions or denials of fact by an accused. They are not this case. The issue here involves silence on the part of the accused, his refusal to answer being equivalent to silence and not the statement of an affirmative or negative fact.

Nor does the issue involve facts disclosing an answer after a refusal to answer, or a statement of intention to withhold information until a specified time or silence by an accused after taking the stand to testify in his own behalf or argument by a State's attorney based upon deductions from the fact that the evidence disclosed certain material information furnished by an accused while certain other material information within the breast of the accused remained undisclosed of record.

Statements of an accused, confessions or admissions of facts tending to prove guilt, are received in evidence on the theory they constitute admissions against interest. Silence of an accused under such circumstances that only a guilty person would remain silent may be shown on the theory it is a circumstance from which an inferential admission against interest may be drawn by the jury. It neither raises a presumption of guilt as a matter of law nor is it equivalent to an admission of guilt. But, in Missouri the silence of an accused while under arrest is not admissible in evidence against him as he is then under no duty to make any statement. [State v. Goldfeder (Mo.), 242 S. W. 403, 404; State v. Hogan (Mo.), 252 S. W. 387, 388[1]; State v. Kissinger, 343 Mo. 781, 785[4], 123 S. W. (2d) 81, 83[4].] State v. Foley, 144 Mo. 600, 613(II), 46 S. W. 733, 736(2), holds statements made to an accused while under arrest and the fact that he made no reply thereto are inadmissible. [Consult also State v. Weber, 272 Mo. 475, 481(III), 199 S. W. 147, 148[3]; Rex v. Watson, 2 Starkie, 116, 158, 171 Eng. Rep. 591.] Our Constitution, Art. II, Sec. 23, provides, in part, "that no person shall be compelled to testify against himself in a criminal cause . . ." Missouri courts have held inadmissible testimony adverse to an accused covering the results of a physical examination of an accused under arrest where the accused stood mute and did not object to the examination, upon the ground such extrajudicial transactions amounted to compelling the accused to testify against himself. [State v. Horton, 247 Mo. 657, 663(II), 153 S. W. 1051, 1053[2]; State v. Newcomb, 220 Mo. 54, 65(IV), 119 S. W. 405, 409. Consult State v. Owens, 302 Mo. 348, 259 S. W. 100; and cases like South Carolina v. Griffin, 129 S. C. 200, 203[5, 6], 124 S. E. 81, 82[5, 6], 35 A. L. R. 1227, Annotations, p. 1236.] Answers, equivalent to silence, have been held admissible or not admissible according to whether the circumstances are such as to make evidence of silence admissible. [16 C. J. 634, nn. 11, 12; 22 C. J. S. 1266, nn. 89, 90; People v. Swaile, 12 Cal. App. 192, 198, 107 Pac. 134, 137 (held admissible); People v. Pfanschmidt, 262 Ill. 411, 448-450, 104 N. E. 804, 819[9, 12], Ann. Cas. 1915A, 1171 (held not admissible).]

Appellant's point is well taken.

III. Appellant questions the sufficiency of the evidence. He concedes it was necessary for the State to prove the falsity of only

one of the alleged representations constituting an offense. [State v. Montgomery (Mo.), 116 S. W. (2d) 72, 74[7].] He argues there was no evidence establishing that he represented the bonds to be genuine, or that he knew the bonds were counterfeit, or that Soffer relied upon any representation of appellant in consummating the transaction. Without developing these issues in detail, we are of opinion the State made a submissible case. By presenting the bonds for sale appellant inferentially represented they were genuine. Considering the record as a whole, it was sufficient to authorize a finding that appellant knew the bonds were not genuine. Notwithstanding Soffer's wire to the New York office and his action based in part thereon, Soffer must have relied upon appellant's inferential representation as to the genuineness of the bonds and not solely upon the telegram from the New York office (as appellant argues), which had not had possession of the purported bonds. From our reading of the record, however, we are of opinion the State may be able to adduce additional facts with respect to the above matters and suggest this be done if the facts are available.

IV. The State's main instruction, which followed the instant charge, should be redrafted to meet the criticism hereinbefore made of the charge against appellant and permit of the instruction conforming to the charge as redrafted.

V. The instruction on flight, if given upon retrial, might well be redrafted. If available, the State should offer additional testimony on this factual issue. Perhaps an attack against the instruction should receive consideration. It (quoting the essential portions) told the jury that if they found from the evidence, ". . . that defendant . . . shortly after the incident described in the evidence, fled from *his place of abode in this city* for the purpose of avoiding arrest . . . and trial for an offense, *if you find an offense was committed at the time in question and that defendant committed it,* then such flight, if you find he did so flee, is a circumstance which may be taken into consideration" *et cetera*. (All italics ours.) Appellant, contending he resided in Oklahoma, says he had no place of abode in St. Louis. There was testimony warranting a finding that appellant had been registered at the Melbourne Hotel in St. Louis and that about two days after his transaction with Soffer appellant left, leaving his hotel bill unpaid and his luggage at the hotel. There is no testimony tending to establish how long appellant stayed at the hotel. Issues involving one's "place of abode" have been presented most frequently in connection with the service of writs under statutory provisions; for instance, authorizing the execution of a summons "by leaving a copy of the petition and writ at his usual place of abode . . ." (Sec. 728, R. S. 1929, Mo. Stat. Ann., p. 947);

and in such instances the phrase "usual place of abode" ordinarily denotes one's residence or lodging as defined in Sec. 655, R. S. 1929, Mo. Stat. Ann., p. 4899, viz.: "seventeenth, the place where the family of any person shall permanently reside in this state, and the place where any person having no family shall generally lodge, shall be deemed the place of residence of such person or persons respectively." Given words and phrases do not crystalize into a hard, fast and fixed meaning but as vehicles of living thought vary the idea to be conveyed according to the circumstances, the time and the setting in which they are used. "Place of abode" is not necessarily always synonymous with residence or habitation. Although possibly not of common current usuage, one may have a "place of abode for the night" or a temporary place of abode in the city of St. Louis. Use of the modifiers "usual" in connection with "place of abode" (Sec. 728), "permanently" in connection with "reside," and "generally" in connection with "lodge" (Sec. 655) constitute legislative recognition that one's place of abode, residence or lodging may be of a temporary nature. In the questioned instruction the phrase "place of abode" is not modified by the "usual" but is modified by the phrase "in this city;" and does not lend itself to a successful attack bottomed upon a use of the modifier "usual" or as necessarily being synonymous with residence. Furthermore, if appellant committed the offense, which the instruction required the jury to find, he was guilty whether he fled or not.

For the errors noted, the judgment is reversed and the cause remanded. *Cooley, C.,* concurs in result; *Westhues, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Leedy, J.,* concur; *Tipton, J.,* concurs in result.