**STATE of Missouri, Respondent,**

v.

**James H. JONES, Appellant.**

No. 36278.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Nov. 18, 1975.

Rehearing Denied En Banc Jan. 23, 1976.

Application to Transfer Denied
March 8, 1976.

John C. Danforth, Atty. Gen., Preston Dean, Robert H. House, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Cir. Atty., Arthur Friedman, Asst. Cir. Atty., St. Louis, for respondent.

Huck, Kasten & LaBeaume, Graham W. LaBeaume, St. Louis, for appellant.

CLEMENS, Presiding Judge.

The State charged defendant James H. Jones with first-degree murder by shooting Unes Johnson, and with felonious assault by pistol-whipping Wardell Johnson, Unes Johnson's father. The jury found defendant guilty of both charges, assessing punishment at life imprisonment for murdering Unes Johnson and five years' imprisonment for feloniously assaulting Wardell Johnson. Judgment and this appeal followed.

Defendant now raises two points: Error in admitting a police technician's testimony that the size of powder marks on Unes Johnson's clothing indicated the distance from which defendant fired the fatal shots, and cross examining defendant about not

having told the arresting police officers about self-defense, to which defendant had testified on direct examination. A summary of the evidence follows.

The State produced seven eye witnesses to the shooting. Twenty-some fellow employees were having a barbecue at a public park; Unes Johnson and his father Wardell Johnson were serving the food. Defendant Jones joined the group and both Johnsons finally denied his repeated, profane demands for more food. The three men argued violently and defendant cursed and threatened to kill both Unes and Wardell Johnson, but the men were separated by others. Later, as the picnic was breaking up, defendant put a case of someone else's beer into his car. When he returned to the picnic group he had a pistol sticking out of his pants pocket. He "challenged" Unes Johnson, pulled out the pistol, and when two or three feet away, fired one shot into him; as Unes backed away defendant shot him three more times. Defendant then pointed the pistol at Wardell Johnson; they struggled and defendant struck Wardell with the pistol.

Defendant then drove away but police soon stopped his car, arrested him and seized a pistol from the car trunk. At trial a police technician testified bullets taken from Unes Johnson's body had been fired from the seized pistol.

Defendant testified he was not carrying a gun that day but Unes Johnson was; that they quarreled and defendant tried to disarm Unes Johnson. As they struggled for the gun four shots were fired, each striking Unes Johnson. (Not one witness supported any part of defendant's version of the shooting.) After defendant shot Unes Johnson, Wardell Johnson interceded, hitting defendant with a radio; defendant retaliated by striking Wardell Johnson with the pistol he said he had taken from Unes Johnson. As defendant left the picnic he hid the pistol in the trunk of his car, from which the police took it after they arrested him.

We will mention other testimony as it relates to the points raised on appeal.

■ Defendant's first contention of error concerns testimony of Officer Paul Reeder, a firearms technician with the St. Louis Police Department. Reeder had testified on direct examination he examined the bullets removed from the victim's body and the pistol seized from defendant's car, that the bullets had been fired from that pistol. On cross examination defense counsel referred to previous testimony that there were bullet holes in Unes Johnson's clothing, each surrounded by an area of lead residue, one being half an inch in diameter and another three quarters of an inch. Defense counsel continued to cross examine Reeder to show his opinion that these lead residue marks indicated the pistol had been fired when close to Unes Johnson's body. On redirect examination Reeder testified the three-quarter inch residue mark on the victim's clothing indicated that shot was fired from a distance of two-and-a-half to three feet. The court overruled defendant's objection that there was "no foundation laid for that; he hasn't tested it."

We note that on direct examination of Officer Reeder the State did not seek his opinion about distance between the defendant's gun and Unes Johnson when shots were fired. That subject was broached by defense counsel to show the pistol was *close* to the victim when fired. The State's redirect examination, to which defendant objected for lack of foundation, merely pursued the subject to show *how close*.

We deny defendant's contention of error in permitting the State's redirect examination of Officer Reeder. It is barred "by the rule which precludes a defendant from asserting error on the basis of the state's presentation of evidence to clarify or explain matter brought into the case by the defendant's own questions." *State v. Holmes*, 419 S.W.2d 15[1, 2] (Mo.1967); and see *State v. Matha*, 446 S.W.2d 829[3] (Mo. 1969).

■ Defendant's main emphasis is that the State erroneously cross examined him about not having told the police when arrested that he had shot Unes Johnson in self defense, contending this violated his right to avoid self incrimination.

After defendant had testified to his self-defense version of the shooting, counsel for the State cross examined him:

"Q. Did you tell this story to the police?

A. No, I did not  .  .  .

MR. LANG: I move for a mistrial. He has commented on his [defendant's] right to refuse to make any statement to the police  .  .  .  I ask that his answer be stricken and the jury be instructed to disregard and a mistrial be declared .  .  .

THE COURT: You got the police in there. The objection is sustained. The motion for a mistrial is overruled. I am going to order the matter stricken and the jury to disregard it.  .  .  .  Members of the Jury, the question whether or not he made a statement to the policeman and his answer are ordered stricken from the record. You are instructed to disregard that question and answer in your deliberations in this case."

The State neither pursued the testimony of defendant's silence in cross examination nor referred to it in closing argument.

Defendant now challenges the quoted question about his silence, contending that mentioning his failure to make an exculpatory statement to police violated his right against self incrimination. We agree.

Defendant cites a long list of cases to support his contention.[1] The oldest of defendant's first three cited cases is *State v. Bowdry,* 346 Mo. 1090, 145 S.W.2d 127[3–7] (1940). It lays down the settled rule that ".  .  .  the silence of an accused while under arrest is not admissible in evidence against him as he is then under no duty to

make any statement." Next is defendant's cited case of *State v. Dowling,* 348 Mo. 589, 154 S.W.2d 749[4–8] (1941). There the state repeatedly asked a police officer about what defendant had said when arrested and answered that defendant refused to say anything. Defendant unsuccessfully objected and moved for a mistrial. The supreme court reversed, relying on *Bowdry, supra.* The third cited case is *State v. Vainikos,* 366 S.W.2d 423[4, 5] (Mo.1963), a concealed weapons case. In that case a police officer testified to a series of questions to, and answers by, the defendant showing that defendant refused to say why he was carrying the gun. As in *Dowling, supra,* defendant's objection was overruled and his motion to strike was denied. In reversing the supreme court followed the exclusionary rule in *Bowdry, supra,* holding the trial court erred in denying defendant's motion to strike, and pointing out that evidence the defendant had refused to answer the police officer's question while under arrest could have been considered by the jury in its determination of defendant's guilt.

We have also considered other cases cited by defendant and those annotated in Mo. Dig., Criminal Law ☞407(1, 2). Those cases do not categorically hold the mention of a defendant's silence *ipso facto* requires a mistrial. The cases do uphold the general principle it is error to introduce evidence of a defendant's silence while under arrest, but there are many variables—whether it was defendant or another witness who mentioned his silence, whether defendant refused or merely failed to make a statement, the degree of emphasis placed on that evidence, its repetition, defense objections thereto and relief requested and the extent of relief granted by the trial court.

We now consider the trial court's remedial action, noting that although it denied defendant's motion for a mistrial it promptly and positively ordered the State's ques-

---

1. Rule 84.04(d) provides ".  .  .  If more than three authorities are cited in support of a point made, the three authorities principally relied on shall be cited first  .  .  ."

tion stricken and instructed the jury to disregard it.

The critical issue before us is whether the erroneous reference to defendant's silence was curable only by granting defendant's motion for a mistrial, or whether it was adequately cured by granting defendant's motion to strike and instructing the jury to disregard. Several comparable cases guide us in this determination.

In *State v. Heather*, 498 S.W.2d 300[1–3] (Mo.App.1973), in the State's opening statement the prosecutor erroneously referred to what the defendant had said while under arrest. As here, the trial court granted defendant's motion to disregard the remark but denied his motion for a mistrial. In affirming, the court said "the declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way, *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970), or where the incident is so grievous that the prejudicial effect can be removed in no other way, *State v. Camper*, 391 S.W.2d 926, 928 (Mo. 1965). For these reasons, whether the remarks of counsel require a mistrial and the discharge of the jury rest largely in the discretion of the trial court which has observed the incident giving rise to the request for mistrial and is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial. *State v. Camper, supra* at 928; *State v. Tate*, 468 S.W.2d 646, 650 (Mo.1971). Our function is to determine whether, as a matter of law, the trial court abused its discretion to the prejudice of the appellant in refusing to declare a mistrial. *State v. Chester*, 445 S.W.2d 393, 399 (Mo.App.1969). When an improper incident occurs during trial and the jury is instructed to disregard it, '. . . the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was not removed by the

action of the trial court.' *State v. Dennison*, 428 S.W.2d 573, 577 (Mo.1968)." To the same effect see *State v. Franklin*, 526 S.W.2d 86[7, 8] (Mo.App.1975).

The issues in *State v. Humphrey*, 462 S.W.2d 804[1] (Mo.1971), also parallel those here. In questioning an arresting officer the state showed that when questioned the defendant refused to give a statement and failed to offer an explanation. The trial court denied defendant's motion for a mistrial, but *sua sponte* ordered the objectionable testimony stricken and instructed the jury to disregard it. In affirming, the court ruled the trial court had not abused its discretion in denying a mistrial.

In assessing the sufficiency of the trial court's corrective action, we also consider that the trial court was aware of the overwhelming weight of the evidence refuting defendant's self-serving testimony he had acted in self defense. See *State v. Degraffenreid*, 477 S.W.2d 57[15] (Mo.1972).

We conclude the trial court did not err in denying defendant's motion for a mistrial.

The judgment is affirmed.

STEWART, J., concurs.

KELLY, J., dissents.

KELLY, Judge (dissenting).

I respectfully dissent because I not only believe we cannot gauge the prejudicial effect of this type of trial tactic engaged in by the prosecutor in this case by asking an obviously objectionable question of the defendant and thereby requiring defense counsel to interpose an objection. By holding, as the majority does, this court condones this tactic of the prosecutor who thereby puts before the jury an inference which he knows, or should certainly know, is not permissible, by the mere asking of the question, in direct violation of the defendant's right, once in custody, to remain silent. The prosecutor thus erodes that right of the defendant.

In *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the Supreme Court recognized the invidious nature of a question of this kind and settled a conflict among the courts of appeals of the federal system whether a defendant can be cross-examined about his silence during police interrogation. As the Court said in *Hale,* l.c. 180, 95 S.Ct. l.c. 2138, 45 L.Ed.2d l.c. 107, "Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted." Hale was not decided on constitutional grounds but rather in the exercise of the Supreme Court's supervisory authority over the lower federal courts. It is significant that in *Hale* the trial court there also instructed the jury to disregard the colloquy but refused to declare a mistrial. It is my humble opinion that the only way appellate courts are going to be able to put a stop to this infringement by prosecutors upon the right of a defendant while in custody to remain silent is to take the route taken by the Supreme Court of the United States by way of supervisory control over the trial courts and reverse and remand in each instance when an incident of this kind occurs. It is unfortunate that the trial court will be the one reversed because of prejudicial material introduced into the trial by the prosecutor. However, perhaps by this means prosecutors will be informed, if they will but read the law, that questions of this ilk will interfere with the administration of justice and cause retrial in cases where they, by improper questioning, bring the matter before the jury.