**STATE of Missouri, Respondent,**

v.

**Billy Hermon WALTERS, Appellant.**

**No. WD 32238.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 1, 1981.

Application to Transfer Denied
Jan. 18, 1982.

J. Lee Guthrie, Nevada, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

PRITCHARD, Judge.

Appellant was convicted of manslaughter, § 565.005, RSMo 1978, by the verdict of a jury and in accordance therewith, he was sentenced to 9 years imprisonment in the Division of Corrections, with credit for jail time.

Point V, first considered, attacks the sufficiency of the evidence to support the verdict. The facts are these: About 2:47 a. m., January 31, 1980, Nevada, Missouri, police dispatcher, Kathy McCarley, received a phone call: "The male voice said: 'I am Billy Walters.' He said he had just killed a man and he needed the police and ambulance." Officer Paul Hogan responded to the call and arrived, with Sergeant Broughton, at 213 East Sycamore Street shortly thereafter. He opened the door and went in and saw a white male lying in front of a sofa in a pool of blood. He determined that the man was not alive. Appellant was talking on the phone, and on being requested to put it down, he said, " 'I shot him. I shot

twice. I missed him with the first shot. I hit him with the second shot.' " Appellant pointed to an area around the ceiling on the south wall and said that he kept the gun beside him all the time, that the white male on the floor had a gun on him, and that appellant said he called about 10 minutes after the shooting. Hogan did not find a gun on the deceased, who was Freddy Ray Holman, but later found one in a pocket of a jacket which was lying on the sofa. Deceased had been shot in the back of the head, a bullet being recovered therefrom during autopsy. Officer Volkman tested appellant for gun powder residue tests on his hands, but did not ask him any questions, appellant having declined, after advice as to his rights, to make a statement to another officer, and had asked for an attorney. During the tests according to Volkman's testimony, this happened: "Q. Did he make any voluntary statements to you at that time? A. He made the statement that he'd shot him. He also said: 'All I have to do is piss on my hands and that will take care of the gun powder residue test.' " It was appellant's version that deceased was pointing a gun at him threatening his life while demanding money of him. Appellant was able to reach a .22 caliber rifle which belonged to his son and shot deceased, as he claimed, in self-defense. Under the facts of this case it was for the jury to determine whether the admitted killing, charged as capital murder, was done without deliberation, premeditation and malice, but was done intentionally, unjustifiably and inexcusably, *State v. Smith*, 518 S.W.2d 665 (Mo.App.1975), thus constituting manslaughter. It was also for the jury to determine under all the facts whether deceased was aggressive and threatening or trying to rob appellant, as he testified, so as to constitute self-defense. A submissible case of manslaughter was made and appellant's Point V is ruled against him.

Appellant's Point I attacks the trial court's adverse rulings to him and failing to grant a mistrial on the prosecutor's eliciting from an investigating officer the fact that appellant refused to make a statement after being advised of his *Miranda* rights; to the prosecutor's questioning of appellant as to why he did not give an exculpatory statement to the police after he was arrested; and to the prosecutor's argument that appellant did not tell the police he was acting in self-defense when he was arrested. Except as to the prosecutor's argument, these matters are presented as plain error affecting appellant's substantial rights, resulting in manifest injustice or miscarriage of justice under Rule 29.12(b).

The investigating officer of the crime was Lt. Volkman, of the Nevada, Missouri, police department. He first testified for the state as to things he found at the scene, and identified photographs of the victim of the shooting. Appellant was not at the scene when Volkman arrived. Volkman testified, on cross-examination by appellant, that he went in to tell appellant about taking a residue test on his hands about 4:30 or 5:00 a. m., on the morning of the shooting, but did not talk to him. Appellant then made the voluntary statement above referred to, and his counsel further cross-examined Volkman: "Q. Do you know what officers interrogated the defendant? A. It is my understanding that Officer Roelker brought him up to the Police Department and read his rights to him. He was not talked to, he requested an attorney. Q. He also talked to Officer Broughton? A. Sergeant Broughton and Officer Hogan at the scene. Q. At the scene? A. Yes. Q. They would know what he said? A. Yes, sir." Then on redirect examination of Volkman, this happened: "Q. You stated that after Patrolman Roelker read him his rights he requested an attorney and would not make a statement, is that correct? A. That's what Officer Roelker told me. I was not present at the time. MR. TEEL: I object as hearsay. MR. SWISCHER: I just asked him— he brought it up. THE COURT: Anything else that was said, of course, is sustained."

Appellant testified in his own behalf, and the state cross-examined him: "Q. Mr. Walters, you didn't tell the police you moved that coat, did you? A. They didn't ask me. They put me in jail. I was trying

to explain to the police what happened and they throwed me in jail. Q. When the police went to read you your rights you didn't make a statement, did you? A. Once they took me to jail in handcuffs I got out of the mood of making a statement. Q. You didn't want to make any statements then? A. If you would of asked nice or if they would of asked nice I would of been happy to have told them exactly what happened right there at the place it happened. They hauled me off to the police and put me in a cell and I asked to see my attorney, that's true. Q. Isn't it true you told Dale Volkman 'I shot him' at the gun powder residue test, you said: 'I shot Freddy Holman'. A. I haven't denied I shot Freddy Holman. Q. Why didn't you go ahead and tell Dale Volkman when he was doing the gun powder residue test that this man had tried to rob you? A. Dale Volkman was taking the gun powder residue test and it was very obvious what he was trying to do to me right then and there."

At this juncture, it is evident that appellant has preserved nothing for review by objecting specifically that the cross-examinations above set forth violated his Fifth Amendment right not to have his silence held against him. That such a right exists is well settled as the state concedes in its brief, and infringement thereof constitutes error. *State v. Givan*, 573 S.W.2d 104 (Mo. App.1978), and cases cited. If the matter stood on the lack of objection or the inadequate objection as to the above cross-examination, *State v. Donnell*, 598 S.W.2d 569, 572[5] (Mo.App.1980), and cases there cited, would control on its holding that where there was testimony that defendant had made no statement after being given a *Miranda* warning, the plain error rule would not be applied, *absent* an objection.

In this case, however, appellant is saved from not having his contentions considered by a proper objection and a preservation of the point in his motion for new trial concerning argument of counsel *directly* relating to the elicitations on the cross-examination. The prosecutor argued in rebuttal: "The manufacturing of the evidence begins right there some ten minutes after he killed him. When the police get there what does he say—he doesn't say: 'He pulled a gun on me.' He didn't tell Kathy McCarley that he had just been robbed. He says—MR. TEEL: I object—MR. SWISCHER: He says—MR. TEEL: May I make my objection—please? THE COURT: Yes. MR. TEEL: The prosecutor is attempting to impeach the defendant by what he did not say, which is in violation of his rights under the Fifth and Fourteenth Amendment of the Constitution. It is improper argument. THE COURT: Objection overruled. MR. SWISCHER: He did not say 'I was robbed.' He said: 'He had a gun on him'. So the manufacturing of the evidence is continuing again. When he talked to Dale Volkman he doesn't say: 'I was robbed.' He simply says: 'I shot him.' When they give him his rights he doesn't say: 'I was robbed.' He says he wants his attorney. * * * MR. SWISCHER: Remember that he has had Joy Hand's report. He has had all the prosecution's files to go over this case with and he stands there on the chair and tells us * * *."

■ In varying circumstances the following cases have held it to be reversible error to elicit testimony or to comment in argument upon a defendant's silence. In *State v. Stuart*, 456 S.W.2d 19 (Mo.banc 1970), a burglary and stealing case, a juror asked "Did either one of these guys claim that money?" and the witness answered that they had not. The court held that the failure of the accused to volunteer an exculpatory statement was not admissible as an admission, that the admission of the evidence violated his constitutional rights, and applying the plain error rule, the judgment was reversed and the cause remanded. In *State v. Vainikos*, 366 S.W.2d 423 (Mo.banc 1963), the state elicited testimony from defendant that he did not tell the arresting officer why he was carrying a gun and the officer had not asked him. On rebuttal, the officer testified that he had asked defendant why he was carrying a gun, but he did not give an answer. The objection and request for mistrial were overruled, which the Supreme Court held to be reversible

error, quoting at page 427[4], *State v. Bowdry*, 346 Mo. 1090, 145 S.W.2d 127, l.c. 129, 130 (1940), " ' * * * in Missouri the silence of an accused while under arrest is not admissible in evidence against him as he is then under no duty to make any statement.' " Although there was an objection sustained to a question about the accused's silence, the court in *State v. Butler*, 512 S.W.2d 466 (Mo.App.1974), found reversible error because of reference thereto in the state's closing argument. *State v. Roth*, 549 S.W.2d 652 (Mo.App.1977), held that a defendant does not waive his pre-trial silence by his appearance on the witness stand, and the case was reversed and remanded because of a reference to his silence made in the state's closing argument. See also *United States v. Hale*, 422 U.S. 171, 180, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975); *State v. Ward*, 571 S.W.2d 773 (Mo.App.1978); *State v. Lindsey*, 578 S.W.2d 903 (Mo.banc 1979) [reversal because of reference during voir dire that defendant did not have to take the stand]; *State v. Benfield*, 522 S.W.2d 830 (Mo.App.1975); and note 22A C.J.S. Criminal Law § 734(1), p. 1072. Because of error in eliciting evidence of appellant's silence, his failure to make exculpatory statements, and in the prosecutor's final argument, the judgment must be reversed. Other claimed errors need not be considered as they may not arise on new trial.

The judgment is reversed and the case is remanded for new trial.

All concur.