STATE of Missouri,
Plaintiff–Respondent,

v.

Horace Dean GUY,
Defendant–Appellant.

No. 15530.

Missouri Court of Appeals,
Southern District,
Division Two.

March 30, 1989.

Motion for Rehearing or Transfer
Denied April 21, 1989.

Application to Transfer Denied
June 13, 1989.

Jim Lynn, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found Horace Dean Guy guilty of selling marihuana in violation of § 195.020, RSMo 1986. His punishment has been assessed at imprisonment for a term of ten (10) years. The defendant appeals. We affirm.

 Inasmuch as this is the defendant's appeal of constitutional right, *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), we consider the sufficiency of the evidence to support the verdict sua sponte. In assessing the sufficiency of the evidence, this court must accept as true all evidence and inferences therefrom which tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Brown,* 660 S.W.2d 694, 698–99 (Mo. banc 1983). So taken and considered, the evidence was that on July 13, 1987, Mark Stoner was working as an undercover agent for the Carthage Police Department. Stoner testified that on July 13, at approximately 9 a.m., he received a telephone call from the defendant. Defendant asked if Stoner was interested in purchasing marihuana, and Stoner told him that he was interested. The parties arranged to meet at the defendant's residence at 1 p.m.

When Stoner arrived at the defendant's residence, he was told that the defendant had no marihuana at hand but if Stoner would wait for a short time the defendant would obtain 1 ounce of marihuana. De-

fendant told Stoner the price would be $120. Stoner further testified that in the course of an earlier telephone conversation he and the defendant had discussed the purchase of a quarter-pound of marihuana for $300; later, the defendant had said he could not obtain a quarter-pound, but could sell Stoner an ounce for $120, and within a day or two could obtain a quarter-pound.

Also present at the defendant's residence were a female named Goldie Hudson and two small children, a girl and a boy. While Stoner waited for delivery of the marihuana—approximately an hour—he and the defendant conversed, "mostly about ... drugs, marihuana...." Defendant told Stoner his marihuana was "good marihuana" and that he had "a good supplier ... that had good quality marijuana." While Stoner and the defendant were waiting, the defendant remarked that "it shouldn't take this long to get from ... Carterville." Stoner was led to believe the defendant's supplier was from Carterville.

About 1:50 p.m. a car pulled into the defendant's driveway. Goldie went out to the car and came back with a brown paper sack. Goldie handed the sack to the defendant who measured out an ounce of material which appeared to be marihuana, divided it into four plastic bags and then put the plastic bags in a larger plastic sack. Stoner paid the defendant $120 and took possession of the marihuana. The marihuana was then delivered to the Carthage Police Department. The evidence is amply sufficient to support the judgment of conviction.

The defendant has tendered two assignments of error in this court. One of his points is that the trial court should have excused venirepersons Gammill, Chandler and Dalton for cause. The basic principle invoked by the defendant is that when a venireman expresses a partiality toward police officer testimony per se—as a generic class—the bias of credibility contrary to the interest of the complainant-litigant disqualifies service as a juror. *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984); *State v. Williams*, 643 S.W.2d 832, 834 (Mo.App.1982); *State v. Owens*, 620 S.W.2d 448, 450 (Mo.App.1981). We have conclud-

ed, after some deliberation, that the trial court did not abuse its discretion in refusing to excuse veniremen Gammill, Dalton and Chandler for cause, but some quotation from the record is necessary to demonstrate the basis for our conclusion.

On voir dire, counsel for defendant propounded the following question to the jury panel as a whole:

"MR. MAPLES: Okay. Now, a question that comes up in, in a lot of cases is, you know, whenever you come into the courtroom, you've got to weigh the believability of witnesses again, and there will be State's witnesses who are either police officers or are working more or less in the function of an undercover police officer working for the police. Is there anybody, uh, who would just automatically assume that a witness is telling the truth and that a witness is not mistaken because he is a police officer or because he's working for the police? Is there anybody, number one, who would automatically assume that that witness must be telling the truth?

(No response.)"

Inasmuch as this question provoked no response from any of the veniremen, counsel directed his questions to particular members of the panel. Counsel first directed his question to Mrs. Rosalie Gammill, thus:

"MR. MAPLES: Mrs. Gammill, I don't mean to select you out, either, but, uh, you've told us that you're married to a police officer. Mr. Gammill, I believe, has been an officer with the Joplin Police Department for many years?

VENIREPERSON GAMMILL: (Nods head.)

MR. MAPLES: I'm sure you're probably acquainted with a lot of the police officers through your husband?

VENIREPERSON GAMMILL: (Nods head.)

MR. MAPLES: Uh, do you think that any of this would cause you to tend to believe the testimony of a police officer above that of another witness?

VENIREPERSON GAMMILL: It might lean toward that, because I have, I

have a sister that's a police officer and some brother-in-laws [sic], and I, I might lean toward that. I would, wouldn't do it on purpose, but, uh—

\* \* \* \* \* \*

MR. MAPLES: So, you think that, if I understand, you'd try to be fair, but you think if there were a conflict that you'd be, uh, inclined to believe the police officer?

VENIREPERSON GAMMILL: Yes."

\* \* \* \* \* \*

Having received this response, trial counsel inquired directly if any other venireman "would tend to believe the testimony of a police officer over that of somebody else because he's an officer?" Venireman Jay Chandler responded, "I would have to, yes." Phylis M. Dalton, another member of the panel, indicated she, also, might be predisposed to believe police testimony. The questions put to Mrs. Dalton, and her answers were as follows:

\* \* \* \* \* \*

"MR. MAPLES: Mrs., uh, Dalton?

VENIREPERSON DALTON: Dalton, yes. Uh, in answer to the question put, uh, I have always been a very much of a law and order person, and, uh, I tend to believe maybe, I don't think they're perfect, but, I mean they haven't, they are doing a job protecting us, the citizens, so I would be a little bit inclined perhaps—

MR. MAPLES: Do you think you—

VENIREPERSON DALTON:—to believe. But it's according, I don't know, you know, until you hear the evidence.

MR. MAPLES: Okay. I understand that, but you're concerned that you would probably give, uh, greater weight to a police officer's testimony?"

\* \* \* \* \* \*

The trial court decided to make some independent inquiry concerning possible bias toward police testimony. Several questions were addressed to the panel as a whole, as follows:

\* \* \* \* \* \*

"THE COURT: All right. The second thing that we probably need to touch on is, and I'll direct this question to all of you, but Mrs. Gammill, Mr. Littlefield, and Mr.—I can't even read my writing—Chandler?—yes—had indicated that, uh, all things being equal that they would believe a police officer. Now, ladies and gentlemen, let's make it clear for the record, and you're entitled to your beliefs and your thoughts and your feelings, but let's make clear for the record exactly what you're telling me. Is there anybody on this jury that's telling me that if a police officer testifies the sun comes up in the west and a person convicted of a crime testifies that the sun comes up in the east, that you're going to believe the police officer that the sun comes up in the west? Is there anyone telling me that? Was that what you were saying?

(No response.)

THE COURT: Is there anyone on this jury that can't consider in determining the believability of the witness and the weight and value to be given to the testimony of the witness many things, including the witness' manner while testifying here on the witness stand? In other words, we've all seen people that we thought were being untruthful just by what we observed of them when they were talking or relating something to us. But can you all consider the witness' manner while testifying, the ability and opportunity of the witness to see and observe and remember any matter about which he testifies? For example, if some witness, be it a police officer or otherwise, testifies that they read the serial number on a dollar bill from 100 yards with just their bare eyes, are you going to consider whether or not that's possible in believing that?

(No response.)

THE COURT: Can you also consider any interest, bias or prejudice the witness may have in giving the testimony?

(No response.)

THE COURT: Can you also consider the reasonableness of the witness' testimony considered in the light of all of the other evidence in the case?

(No response.)

THE COURT: And can you also consider any other matter that has a tendency in reason to prove or disprove the truthfulness of the witness' testimony?

(No response.)

THE COURT: Now, ladies and gentlemen, my question is, and I want to make it clear, and you're certainly entitled to your belief, but if there's anybody telling me that they're going to believe every word that any witness says, and specifically, that they're going to believe every word a police officer says without considering anything else, we really need to know that. Mrs. Gammill, I guess I'll include you in that, too. Are you telling me that if Richard came home and told you that the sun came up in the south, you would believe him?

VENIREPERSON GAMMILL: No.

(Laughter.)

THE COURT: Would you consider the testimony of any police officer along with many other factors in determining the weight that you would give it, Mrs. Gammill?

VENIREPERSON GAMMILL: Yes.

THE COURT: All right. Mrs. Gammill, I don't mean to pick on you, but Mrs. Gammill, Mrs. White, Mrs. Oliver and Mrs. Spencer have all indicated that there's been somebody presently or in the past a police officer that was related to you or very close to you. Again, the fact that you have a police officer in your family or in your background, does that mean that you're going to believe any police officer in anything they tell you? Does any, any of you feel that way or anybody on the jury?

VENIREPERSON GAMMILL: (Shakes head.)

VENIREPERSON WHITE: (Shakes head.)

VENIREPERSON OLIVER: (Shakes head.)

VENIREPERSON SPENCER: (Shakes head.)"

■ Veniremen Gammill, Dalton and Chandler were challenged for cause, but the challenges were refused by the trial court. Defense counsel was obliged to use three peremptory challenges to exclude Gammill, Dalton and Chandler from the panel. A criminal defendant is, of course, entitled to a full panel of qualified jurors before he is required to make his peremptory challenges. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc), cert. denied, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). The fact that a prospective juror is a former police officer does not disqualify a prospective juror; neither does the fact that the venireperson is married to a police officer constitute grounds for challenge for cause. *State v. Hall*, 612 S.W.2d 782, 785 (Mo.1981). It is also to be borne in mind that the determination of a venireman's qualifications is a matter for the trial court in the exercise of sound judicial discretion, and the court's determination should be rejected only upon a clear showing of abuse of that discretion. *State v. Olinghouse*, 605 S.W.2d 58, 69 (Mo. banc 1980).

■ There is no doubt that when a venireman gives an equivocal or otherwise uncertain answer of his (or her) ability to hear the evidence and adjudge the cause without bias or prejudice, then it becomes the trial court's duty to make some independent inquiry of qualification. *State v. Trimble*, 654 S.W.2d 245, 252[6] (Mo.App. 1983). We conclude the trial court inquired in detail sufficient to assure that the venire could set aside any partiality to the testimony of police officers and decide the case upon the evidence presented. The only real question raised by this first point is whether the trial court should have interrogated each member of the panel individually to determine whether each member could set his predisposition, if any, aside. We do not propose to discuss the matter at length, nor to elucidate a rule applicable beyond this case.

In general, our courts have held that the parties have no right to voir dire the panel members separately. *State v. Gray*, 731 S.W.2d 275, 281 (Mo.App.1987); *State v. Chaney*, 663 S.W.2d 279, 286[16, 17] (Mo. App.1983). Although the procedure is somewhat different in the federal courts, the federal precedents are instructive. The federal courts have considered the necessity for individual voir dire in at least two

contexts. In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), rehearing denied, 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968), the United States Supreme Court held, inter alia, that a prospective juror should be excluded if his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt. It was held, however, that group questioning and non-verbal responses might be considered in determining a venireman's qualification under the *Witherspoon* rule. *McCorquodale v. Balkcom,* 721 F.2d 1493, 1495–97[1] (11th Cir.1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 546 (1984). In *United States v. Birdsell,* 775 F.2d 645, 652 (5th Cir.1985), cert. denied, 476 U.S. 1119, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986), the court held there was no plain error in questioning the jury en masse concerning prejudice against the insanity defense, especially in view of the fact that counsel did not object to group questioning. In general, it may be said that rejection of the trial court's method of conducting voir dire is not warranted unless an appellate court finds circumstances which create an impermissible threat of an unfair trial. *United States v. Vest,* 842 F.2d 1319, 1331–32 (1st Cir.1988). In the case before us, even though the individual veniremen did not always respond orally to questions put to them, the record shows that they gave some indication they wished to respond if an individual response was appropriate. The trial court's rehabilitation of veniremen Gammill, Chandler and Dalton was, in our opinion, sufficient even though the prospective jurors were not individually questioned. We do not undertake to comment upon the *form* of the questions put to the panel.

The defendant's additional point is that the trial court erroneously received evidence of his commission of other crimes, over his objection and to his prejudice. The point is not properly preserved for review. By oral motion in limine made prior to trial, counsel for the defendant advised the court that the State "apparently claims to have a tape recording of a conversation between [the defendant] and Mr. Stoner that they say took place after the date of this sale, and that apparently, that allegedly involves Mr. Guy offering to make another sale to Mr. Stoner." Counsel took the position that the evidence was not admissible for any purpose. The motion in limine was denied.

During the course of the trial, the Prosecuting Attorney asked Stoner the following questions:

\* \* \* \* \* \*

"Q. Was there any other discussion with Mr. Guy and only with Mr. Guy regarding who his supplier was?

A. Uh, yes, sir, there, uh, was something mentioned about it shouldn't take this long to get from, uh, Carterville, and, uh, I had, was led to believe that, uh, his supplier was from [the] Carterville area, and, uh, other than that, I don't believe so, no.

Q. All right. Did Mr. Guy assist you in locating the individual from Carterville?

A. Uh, yes, sir, at a, at a later date.

Q. All right. When would that have been?

A. Uh, approximately two days later, I believe it was two days later.

Q. Was this a request that you made to Mr. Guy for him to do that?

A. Uh—"

\* \* \* \* \* \*

■ At this point, counsel for the defendant finally objected. Over counsel's objection, Stoner was permitted to testify that he had been introduced to a person identified as the defendant's supplier, from whom he had unsuccessfully attempted to purchase a quarter-pound of marihuana. Whether or not the evidence was improperly admitted, the error, if any, in admitting it is not before the court. Rulings on preliminary motions to limit or exclude testimony are interlocutory only; the motion itself does not serve as a continuing objection, and unless the movant's objection is renewed when the evidence objected to is offered, nothing is preserved for appellate review. *State v. Freeman,* 667 S.W.2d 443, 447 (Mo.App.1984). Moreover, counsel was obliged to object at the earliest opportunity once the objectionable character of the testimony became apparent. *State v.*

*Stamps,* 569 S.W.2d 762, 765 (Mo.App. 1978), and see *State v. Ricks,* 642 S.W.2d 375, 377 (Mo.App.1982). As soon as the Prosecuting Attorney began asking questions about the defendant's supplier, it was apparent, in light of the discussion had when the motion in limine was tendered, that the State was going to offer evidence of other crimes. The objection was untimely, and nothing was preserved for our review.

We find no error in any respect urged in this court. Accordingly, the judgment is affirmed.

MAUS, J., concurs.

PREWITT, Acting P.J., dissents.

PREWITT, Acting Presiding Judge.

I respectfully dissent.

I believe that at least venireman Gammill and probably veniremen Dalton and Chandler should have been excused for cause as they indicated a fixed partiality toward testimony of police officers. Cf. *State v. Williams,* 643 S.W.2d 832 (Mo.App.1982). See also *State v. Hyzer,* 729 S.W.2d 576, 579 (Mo.App.1987). I do not believe that the trial court's inquiries established that the veniremen could be impartial.