**STATE of Missouri, Respondent,**

v.

**Terry Lee GILLIS, Appellant.**

**No. 58786.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 18, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 8, 1991.

Mark H. Neill, Tammi Anne Milligan, St. Louis, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Terry Gillis, appeals from his jury conviction in the Circuit Court of the City of St. Louis of two counts of assault in the second degree, RSMo § 565.060 (1986) for which he was sentenced as a prior offender to two concurrent three year terms in prison. We affirm.

In the early morning hours of May 16, 1989, Donald Brodigan and Angela Williamson were riding Brodigan's motorcycle on Gravois Avenue in the City of St. Louis. Brodigan had picked up Williamson from her place of employment, the Cabaret Club, and was taking Miss Williamson home. Around the intersection of Meramec and Gravois, Brodigan noticed a gold Cadillac Seville in the lane next to him. The occupants of the Cadillac, three white males, began making lewd and suggestive comments toward Miss Williamson. This activity continued for at least three blocks, including stops at red lights. Although Mr. Brodigan and Miss Williamson at first attempted to ignore the occupants of the Cadillac, Mr. Brodigan soon became upset and replied to their obscene comments with an obscene gesture of his own. Miss Wil-

liamson then overheard one of the occupants of the Cadillac threaten to "fuck up" the motorcycle riders.

Five witnesses testified that the Cadillac soon began swerving into the motorcycle's lane. Miss Williamson testified that she looked over at the Cadillac and saw the driver "jerking the wheel" to swerve toward them. On one of these swerves, the Cadillac hit Mr. Brodigan in the leg and knocked the motorcycle over. Both Mr. Brodigan and Miss Williamson sustained serious injuries in the fall.

After colliding with the motorcycle, the Cadillac took off down Gravois. Chuck Sadell, who was driving behind the motorcycle, checked to make sure the passengers of the motorcycle were attended to and then pursued the Cadillac. Although Mr. Sadell could not locate the Cadillac, Michael Budde, the driver of the car behind the Cadillac, memorized the license plate number of the car. Appellant, the driver of the Cadillac, was soon thereafter apprehended.

Appellant was indicted on August 7, 1989, on two charges of assault in the second degree. A substitute information in lieu of indictment was filed on April 3, 1990, charging appellant as a prior offender. The trial began on April 4, 1990, and continued the next day. After deliberating for approximately four hours, the jury returned its verdict of guilt on both charges. This appeal followed.

The appellant first contends that the trial court erred in refusing to grant a mistrial when Angela Williamson testified she suffered a miscarriage as a result of the accident in this case. We disagree.

During the direct examination of Miss Williamson, the following colloquy occurred:

Q Were you ever treated for any injuries?

A Yes.

Q What kind of injuries did you suffer?

A I had a tumor that ruptured when I got hit. I lost a baby.

Q You were pregnant.

MR. NEILL: I'm going to object. There's no medical foundation. I'm go-

ing to ask that that be stricken from the record.

THE COURT: Step up.

(The following proceedings took place at the bench.)

MR. NEILL: Judge, this is highly prejudicial. It has no foundation in fact, and it's completely unfounded. There's no medical basis for it, and there's no basis on her part. She went into the hospital in June with an ovarian cyst and an ectopic pregnancy, and that's what the medical records indicate, and a touch of the clap, and that's what she was treated for Judge, not as a result of this injury, and there's no medical connection in those records—as a matter of fact, at this time I'm going to ask for a mistrial. I think that this is so prejudicial that she mentioned the fact that she had spontaneous abortion, that I cannot get a fair trial at this time and it's going to deny my client a fair trial because now we're talking about something else. We're talking about murder or manslaughter.

THE COURT: It depends whether you're pro-choice or pro-life.

MR. TYSON: We're not talking about murder or manslaughter. The issue in this case is identification and whether this was an accident and I was expecting her to say she had cuts and scrapes and bruises, which is what the other people said.

MR. NEILL: Don't get me wrong. I'm not trying say Mr. Tyson intentionally did this.

THE COURT: All right, then, here's the ruling of the Court. The objection's sustained. I will order the jury to disregard the last bit of testimony, and I will strike it from the record and your request for a mistrial is denied. Let's proceed.

(The proceedings returned to open court.)

THE COURT: Ladies and gentlemen, I have sustained defense counsel's objection to the last statement by the witness. I am ordering you not to consider it, and I'm striking it from the record. Everybody understand? You may proceed.

We agree the testimony of Miss Williamson was not admissible. The trial court's instruction to the jury to disregard the testimony of Miss Williamson reflects this also. The sole question presented is whether or not a mistrial should have been declared. The declaration of a mistrial is a drastic remedy and should only be employed in the most extraordinary circumstances. *State v. Sidebottom,* 753 S.W.2d 915, 919–20 (Mo. banc 1988), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). When a witness unexpectedly volunteers inadmissible information, the action called for rests in the trial court's discretion as it is the trial court that is in the best position to determine the effect of the statement and what measures, if any, might be necessary to cure that effect. *State v. Miller,* 680 S.W.2d 253, 255 (Mo. App., E.D.1984). Absent an impermissible abuse of this discretion, this court will not interfere.

There is no evidence in the record that the State made a conscious effort to bring out this type of testimony, indeed, the evidence is quite to the contrary. In addition, after Miss Williamson testified about her miscarriage, the trial court issued an instruction to the jury indicating that the jury should disregard that evidence. The jury is presumed to have followed the court's instruction. *State v. Cooper,* 708 S.W.2d 299, 304 (Mo.App., E.D.1986). Given the trial judge's unique ability to assess the testimony's impact upon the jury, we hesitate to interfere with this exercise of discretion. Point denied.

Appellant next contends the trial court erred in allowing the testimony of Ed Rogers, an Assistant United States Attorney, as rebuttal evidence in that he was unendorsed by the State.

During the appellant's case, the appellant testified, contrary to the testimony of Mr. Brodigan and Miss Williamson, he did not have a mustache at the time of the accident and had not had a mustache since 1977. After the close of appellant's case, the State called Counselor Rogers to testify he saw the appellant in 1985 or 1986 and the appellant had a mustache at that time.

This was the extent of Counselor Rogers' testimony. The trial court did not permit the State to go into how Counselor Rogers came to know the appellant or what Counselor Rogers did for a living beyond the fact that Counselor Rogers was an attorney. Appellant contends that Counselor Rogers' testimony should not have been permitted because Counselor Rogers was unendorsed and because Counselor Rogers' occupation prevented appellant from effective cross-examination.

■ Initially, we note there is no endorsement requirement for State rebuttal witnesses unless they are called to rebut a defense of alibi or mental disease. *State v. Reese,* 787 S.W.2d 768, 771 (Mo.App., W.D.1990). The decision of whether the individual is a proper rebuttal witness is determined by the trial court. *Id.* Absent a showing of an abuse of discretion, an appellate court will not reverse the trial court because it admitted rebuttal evidence. *State v. Jones,* 779 S.W.2d 668, 669 (Mo. App., E.D.1989).

■ The testimony of Counselor Rogers was limited to whether or not the appellant had a mustache in 1985 or 1986. Counselor Rogers did not testify as to how he came to know the appellant nor did he testify as to what he did for a living at the time.[1] The testimony of Counselor Rogers does not go to the alibi of the appellant. Indeed, appellant did not even present an alibi at trial. Appellant's sole defense at trial was he did not intentionally run the victims off the road.

As to appellant's contention that he was unable to cross-examine Counselor Rogers, the record reveals that the trial court did not limit appellant's opportunity to cross-examine Counselor Rogers, instead, appellant himself refused to cross-examine Counselor Rogers for what he now claims are "obvious tactical reasons." We find no abuse of discretion on the part of the trial court in permitting Counselor Rogers to testify. In any case, the nature of Counselor Rogers' testimony could not have

prejudiced the appellant. The appellant never claimed at trial that he was not the driver of the Cadillac in question. In fact, two witnesses for the appellant, including the appellant himself, testified he was the driver of the Cadillac. The sole issue at trial was whether or not appellant hit the victims intentionally. The identification of the driver of the Cadillac was not at issue in trial. Point denied.

■ Appellant's next contention is the trial court erred in overruling his motion for a mistrial when, on cross-examination, the appellant testified that certain mug shots in the State's possession were taken of the appellant in 1976 or 1977. Appellant complains these remarks and statements were prejudicial and suggestive in that appellant had testified his only prior conviction had been in 1988. We disagree.

The record reveals the picture of the appellant in the State's possession showed the appellant with a mustache. As aforementioned, the appellant had stated that he had shaved off his mustache in 1977 and had not worn one since. Because the conviction of the appellant had occurred in 1988, the State presented the appellant with the mug shot and asked him when the picture was taken. The appellant replied "1976." The prosecutor expressed surprise and noted for the trial court, out of the hearing of the jury, that the date had been cut off the bottom of the picture. It is clear the prosecutor was attempting to impeach the appellant's testimony that he had shaved off his mustache in 1977 by presenting him with what the State believed was a picture from 1988. Any impermissible inference that can be drawn from the picture is due to the appellant's testimony the picture was taken in 1976 or 1977.

In any case, we note the evidence in this case is particularly strong. The appellant testified that he was the driver of the Cadillac that hit the victims. Five witnesses testified appellant swung his car in a violent fashion into the lane of the victims

---

1. The record reveals that Counselor Rogers was an Assistant Circuit Attorney for the City of St. Louis at the time.

several times before hitting the victims. Overwhelming evidence of guilt renders error such as the one alleged here harmless. *State v. Price,* 787 S.W.2d 296, 302 (Mo. App., W.D.1990). Point denied.

Appellant next contends the trial court erred in overruling his motion to suppress the victim's pretrial identification of the appellant and in permitting testimony of the identification into evidence because the procedures employed in the pretrial identification were unduly suggestive and unreliable. We disagree.

 In reviewing the admissibility of evidence, this court recognizes the trial court is afforded broad discretion. *State v. Clark,* 711 S.W.2d 928, 932 (Mo.App., E.D.1986). The test for the admission of identification testimony is two-prong: 1) Was the pretrial identification procedure impermissibly suggestive; and 2) if so, what impact did the pretrial identification have upon the reliability of the witness's identification. *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc 1989).

We have reviewed the testimony of the witnesses at the pretrial hearing on the motion to suppress and the testimony at trial and do not find the pretrial identification procedures used were impermissibly suggestive. In addition, we find the identification of the appellant was reliable. Finally, we note the appellant testified he was the driver of the Cadillac that hit the victim's motorcycle. "Any possible error in identification testimony is cured when the defendant's own testimony removed the issue of identification for the trial." *State v. Grey,* 525 S.W.2d 367, 370 (Mo.App., 1975). Point denied.

Appellant's final claim on appeal is the trial court erred in denying his request for twenty five minutes for closing argument and limiting his closing argument to twenty minutes. We note there is no indication whatsoever that the appellant ever objected to this limitation on his closing argument. We further note the trial court is given broad discretion determining the amount of time that should be given for closing argument. *State v. Brown,* 636

S.W.2d 929, 938 (Mo. banc 1982). The sole issue to argue to the jury in this case was whether or not the appellant had intended to run into the victim's motorcycle. We cannot declare the time allotted was, therefore, inadequate. Point denied.

Affirmed.

CRIST and AHRENS, JJ., concur.