STATE of Missouri, Respondent,

v.

Terry L. NEWSON, Appellant.

No. WD 47245.

Missouri Court of Appeals,
Western District.

May 30, 1995.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

Following a jury trial, Terry L. Newson was convicted of murder in the first degree, § 565.020.1, RSMo 1994,[1] assault in the first degree, § 565.050, and two counts of armed criminal action, § 571.015, for which he was sentenced respectively to life imprisonment without the possibility of parole and to three consecutive terms of life imprisonment. He appeals the convictions. Mr. Newson also challenges the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing.

On appeal, Mr. Newson raises three points, claiming that the trial court erred (1) in denying Mr. Newson's motion for a mistrial, since he was prejudiced by the unsolicited outburst of a witness; (2) in overruling his motions in limine and trial objections relating to hearsay testimony of one witness; and (3) in denying Mr. Newson's Rule 29.15 motion, since his counsel was ineffective in failing to cross-examine a witness about the hostility she felt towards Mr. Newson.

The judgments are affirmed.

Mr. Newson and Andrea Renee Jones lived together, along with Ms. Jones' two children, for approximately one year. On December 19, 1990, Harry Foster, a neighbor who lived across from Mr. Newson and Ms. Jones, saw them arguing in the front yard. Mr. Foster heard Ms. Jones yell, "You're going to be sorry," to which Mr. Newson retorted, "You're going to damn well be sorry."

That same day, Mr. Newson spent time with a friend of his, Terry Emery. The two men picked up their checks, went to a pawn shop to retrieve Mr. Newson's gun, and then proceeded to another friend's house. Mr. Emery testified that he and Mr. Newson consumed alcohol during the course of the day. Mr. Newson returned home around 10:00 p.m.

When Mr. Newson entered the house he shared with Ms. Jones, Ms. Jones was speaking on the telephone to a friend, Jacqueline Brooks. Ms. Brooks was to be married on December 21, 1990, and Ms. Jones was the maid of honor. They had been discussing plans to celebrate the wedding.

Once Mr. Newson arrived, Ms. Brooks could hear Mr. Newson and Ms. Jones talking on the other end of the telephone, and noticed that Ms. Jones had become anxious. Earlier, Ms. Jones had confided to Ms. Brooks that on several occasions she had asked Mr. Newson to leave the house, but that he had not done so. By the evening of December 19, 1990, Ms. Jones had packed Mr. Newson's bags. Upon Mr. Newson's return home, Ms. Jones told Ms. Brooks that she was getting off the telephone to tell Mr. Newson to leave one more time.

After the telephone conversation on December 19, 1990, Ms. Brooks never spoke with Ms. Jones again. Ms. Brooks attempted to call Ms. Jones two or three times a day, but each time Mr. Newson made excuses as to why Ms. Jones could not come to the telephone. Ms. Jones failed to appear at Ms. Brooks' wedding on December 21st, 1990.

Ms. Jones' mother, Doris Houston, had also been unable to reach Ms. Jones, so she proceeded to Ms. Jones' house at approximately 10:30 p.m. on December 23, 1990. Upon arriving, Mr. Newson told her that Ms. Jones was not there, and that she would be returning shortly. Ms. Houston remained at the residence to wait for her daughter and to

---

[1] Unless otherwise indicated, all statutory citations refer to Revised Statutes of Missouri 1994.

read bedtime stories to Ms. Jones' two children. When she asked one of the children where her mother was, the child responded that she was "[t]here in the bed."

Ms. Houston walked into the bedroom, turned on the light and saw her daughter in bed with a blanket over her. She called her daughter's name, but heard no response. Ms. Houston then noticed the condition of her daughter's body, and realized that she was dead. As Ms. Houston turned to leave the room, she found herself staring into the barrel of a gun held by Mr. Newson.

Mr. Newson shot her in the face, saying, "I don't want to go to jail." He also remarked, "[Y]ou should not have come back here, why didn't you stay away[?]" After Ms. Houston was struck two times in the face, Mr. Newson turned the light out, left the room and closed the door. Ms. Houston staggered to the closet wall, where she sat on the floor, bleeding to such an extent that she had to open her mouth to prevent herself from choking. As she began to feel hot and sick, she stood up and opened the main window; she attempted to open the storm window as well, but was unsuccessful. At that point, Mr. Newson returned. Mr. Newson stated that if Ms. Houston did not lie down, he would shoot her again. Ms. Houston explained, "If I lay down I'll die," to which Mr. Newson responded, "Yeah, I know." Ms. Houston then lay down and asked for a blanket. Mr. Newson gave her one and left the room.

Ms. Houston heard water running and ascertained that Mr. Newson was taking a bath. She also heard him take the front off the furnace and detected the odor of gas. Later, Mr. Newson returned to the bedroom a second time. He pulled the blanket off Ms. Houston's face, shined a flashlight in her eyes and said, "Oh, it won't be long now." He then left the house.

Upon Mr. Newson's departure, Ms. Houston attempted to use the telephone, but Mr. Newson had made it inoperable. She struggled down the hall, rested on the couch, and finally found the front door-knob. Ms. Houston was able to exit the house and reach Mr. Foster's residence across the street, where she received help.

Between 7:30 and 8:00 a.m. the next morning, Mr. Newson arrived at Mr. Emery's residence. Mr. Emery testified that Mr. Newson was acting as if something was wrong. He was wearing a lady's coat and had a blood-stained sock tied around his wrist. Mr. Emery invited Mr. Newson inside, at which time Mr. Newson told him that he and Ms. Jones had been arguing. After comforting Mr. Newson and giving him a blanket, Mr. Emery returned to bed for approximately forty-five minutes.

At some point, Mr. Newson called a former girlfriend, Danielle Cisco. Ms. Cisco testified that Mr. Newson sounded depressed. He told her he was leaving town and would not be coming back. Ms. Cisco inquired as to what Mr. Newson had done, and he responded that she would find out in due time.

When Mr. Emery got up, he found Mr. Newson lying on the floor next to the couch. The telephone rang, and Mr. Emery's brother informed Mr. Emery that Ms. Jones had been killed and that her mother had been shot. Mr. Emery asked Mr. Newson if he knew about those events. Mr. Newson responded affirmatively.

According to Mr. Emery, he and Mr. Newson got inside Mr. Emery's car, intending to go to the store and then to the police station. While Mr. Newson was inside the vehicle, two police cars arrived and Mr. Newson was arrested. He led an officer to the location where he had hidden the gun, in the ceiling of a laundry room. The gun contained four unspent cartridges.

The police found Ms. Jones' body on the bed of her home, covered with laundry. The cause of her death was one gunshot wound to the back of the head. The bullet had travelled through her brain cavity and was recovered from underneath the front portion of the skull.

Ms. Houston had been shot twice. Both bullets entered on the left side of her face, but one bullet passed through the right side of her neck, while the other one lodged underneath the skin of her neck. Upon police examination, it was determined that the bullet found in Ms. Jones' skull, as well as the

two bullets which struck Ms. Houston, had been fired from Mr. Newson's gun. In addition, three empty shell casings were found on the floor of the bedroom of the house shared by Mr. Newson and Ms. Jones.

Following trial, a jury returned a verdict finding Mr. Newson guilty of murder in the first degree, assault in the first degree and two counts of armed criminal action. Mr. Newson filed a Rule 29.15 motion requesting post-conviction relief. After an evidentiary hearing, the motion was denied. Mr. Newson appeals both his convictions and the judgment on his post-conviction motion.

## I.

In his first point on appeal, Mr. Newson claims that the trial court erred in overruling his request for a mistrial because, at the end of Ms. Houston's cross-examination by the defense, she blurted, "This man will kill again." Mr. Newson charges that the unsolicited outburst denied him due process and a fair trial as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution, as well as Article I, Sections 10 and 18(a) of the Missouri Constitution.

■■ A mistrial is a drastic remedy which is only employed in extraordinary circumstances. *State v. Sidebottom*, 753 S.W.2d 915, 919–20 (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). It is appropriate when an incident is so grievous that a mistrial is the sole means by which the incident's prejudicial effect can be removed. *State v. Camper*, 391 S.W.2d 926, 928 (Mo.1965). The trial court, having viewed the incident first-hand, is in the best position to determine whether prejudice can be rectified by an action short of declaring a mistrial. *Id.* Accordingly, "[a] trial court has broad discretion in determining whether to grant a mistrial and will be reversed only for an abuse of that discretion." *State v. Goree*, 762 S.W.2d 20, 24–25 (Mo. banc 1988).

■ When a witness unexpectedly volunteers inadmissible information, the trial court determines which measures, if any, are necessary to cure the potential prejudice. *State v. Gillis*, 812 S.W.2d 887, 890 (Mo.App.1991). If, rather than granting a mistrial, the trial court takes remedial action, it must be determined on review simply whether the error was so prejudicial that the action of the trial court did not remove the prejudicial effect, as a matter of law. *State v. Jones*, 532 S.W.2d 772, 775 (Mo.App.1975).

■ In the case at hand, the court took remedial action following Ms. Houston's comment that Mr. Newson would kill again. Specifically, the court stated, "All comments will be stricken. Disregard any further comments." Then, in its Instruction No. 2, patterned after MAI–CR3d 302.02, the jury was told to "disregard any answer or other matter which the Court directs you not to consider and anything which the Court orders stricken from the record." In the absence of a showing to the contrary, the jury is presumed to have followed the trial court's instruction. *State v. Brasher*, 867 S.W.2d 565, 569 (Mo.App.1993). Therefore, this court does not find, as a matter of law, that the trial court's action failed to relieve any potential prejudicial effect of the unsolicited comment. Point denied.

## II.

In his second point on appeal, Mr. Newson claims that the trial court erred in overruling his motions in limine and objections at trial regarding certain testimony of Ms. Brooks. Mr. Newson challenges as hearsay the portions of testimony wherein Ms. Brooks stated that Ms. Jones was attempting to end her relationship with Mr. Newson and that Ms. Jones had asked Mr. Newson to move out of the house. According to Mr. Newson, the admission of such testimony violated his right to confront and cross-examine witnesses against him, as well as his right to a fair trial and to due process of law, as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. The State asserts that Mr. Newson's claim has not been preserved for appellate review, however, in that Mr. Newson never raised a specific objection on the basis of hearsay.

■ A review of the record indicates that, prior to trial, Mr. Newson filed numerous

motions in limine, two of which are relevant to the testimony Mr. Newson now challenges on appeal. The first requested the preclusion of any testimony by Ms. Brooks concerning her knowledge of statements by Ms. Jones in which Ms. Jones requested that Mr. Newson move out of the house. Contrary to the State's contention, however, this motion cited hearsay as its basis.

The second motion asked the court to disallow Ms. Brook's testimony as to statements that Ms. Jones was attempting to end her relationship with Mr. Newson and trying to persuade him to leave the house. This second motion did not allege hearsay. Rather, it stated that the "testimony or evidence would be irrelevant, immaterial and grossly prejudicial to defendant's case" and that it was "for the sole purpose of inflaming the jury and biasing them against defendant's trial posture." Both motions were denied.

Although rulings on preliminary motions to limit or exclude testimony are normally interlocutory and do not preserve a matter for appeal, the objection may be renewed when the relevant evidence is presented. *State v. Guy,* 770 S.W.2d 362, 367 (Mo. App.1989). A motion in limine which is later converted into a continuing objection represents an appropriate method by which one can preserve issues for appeal. *See State v. Allen,* 845 S.W.2d 671, 674 (Mo.App.1993). At trial, once it appeared Ms. Brooks was about to discuss information Ms. Jones had related to her regarding her relationship with Mr. Newson, defense counsel renewed these motions in limine and asked that the court consider them continuing objections.

[DEFENSE COUNSEL] At this point for the purpose of expediency I would renew, if it's agreeable with the Court and the State, the motions with regard to the discussion that [Ms. Brooks] had with Renee Jones about— ... she will go into the fact that Renee had informed her that she'd been trying to end the relationship with the defendant and that she'd been trying to move the defendant out. So what I will do is at this time renew all ... of those motions and ask that the Court consider them contemporaneously as the evidence comes out,

consider them renewed in their entirety, *and if disinclined to rule favorably allow those as continuing objections,* but I do request to renew each of those.

[COURT] All right. They will be shown renewed. They will be overruled and *we will show them continuing.*

(Emphasis added).

The continuing objections, therefore, preserved for appeal the matters asserted in the motions in limine. Because only one of the pertinent motions in limine was based on a contention of hearsay, however, the preservation of such error is limited. The objection to hearsay was preserved as to statements by Ms. Jones that she requested that Mr. Newson move out of the house. It was not preserved as to statements that Ms. Jones was attempting to end her relationship with Mr. Newson.

When a matter is not preserved for appeal, reversal is appropriate only if the appellate court finds plain error. *State v. Howton,* 890 S.W.2d 740, 746 (Mo.App.1995). The plain error standard provides that a ruling shall not be set aside unless the ruling causes manifest injustice or a miscarriage of justice, and the burden of establishing such error is on the appellant. *Id.* It has been well-established in Missouri that the admission of hearsay evidence is not plain error when the defendant fails to properly object. *See id.; State v. Lewis,* 809 S.W.2d 878, 879 (Mo.App.1991). "Inadmissible hearsay which goes in the record without objection may be considered by the jury." *State v. Wallace,* 825 S.W.2d 626, 632 (Mo.App.1992). Mr. Newson was not, therefore, denied a fair trial due to statements by Ms. Brooks that Ms. Jones was attempting to end her relationship with Mr. Newson.

On the other hand, a more detailed analysis is necessary as to Ms. Brooks' testimony regarding requests for Mr. Newson to move out of the house, since a continuing hearsay objection was proffered to that issue. The challenged testimony was as follows:

Q: What about the conversation regarding asking Terry [Newson] to leave? What—do you know when that conversation started?

A:  [Ms. Jones] had asked him to leave more than once.

Q:  Okay?

A:  And he just stayed around.

Q.  And did she tell you that she had asked him to leave?

A:  Yes.

Q:  On December 19 when Terry Newson came back to the house during your telephone call did you hear any conversation about Renee [Jones] asking him to leave at that point?

A:  Yes, she asked him to leave again.

Q:  Okay.  While you were on the telephone?

A:  Not while I was on the telephone, but she got off the phone to talk to him about leaving again.

. . . .

A:  Okay.  Now, after that phone conversation on December 19, 1990 did you ever again speak with Renee Jones?

A:  No, I did not talk to her after that.

Before discussing whether this testimony involves inadmissible hearsay, it should be noted that the evidence falls into two distinct categories.  The first portion of the testimony refers to Ms. Brooks' cognizance of *previous* communications between Ms. Jones and Mr. Newson, since Ms. Jones told Ms. Brooks that she had already asked Mr. Newson to leave on more than one occasion.  The second portion of the testimony involves Ms. Jones' *present* intent to ask Mr. Newson to leave on December 19, 1990, after finishing the telephone conversation with Ms. Brooks.

▮ As to the latter category, the trial court did not err in allowing Ms. Brooks' testimony.  "A declaration indicating a present intention to do a particular act in the immediate future, made in apparent good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed."  *Lewis v. Lowe & Campbell Athletic Goods Co.*, 247 S.W.2d 800, 804 (Mo.

1952) (quoting 31 C.J.S. *Evidence* § 256).  *See also State v. Benson*, 346 Mo. 497, 501, 142 S.W.2d 52, 54 (1940); *State v. Ilgenfritz*, 263 Mo. 615, 633–35, 173 S.W. 1041, 1046 (1915); *Weber v. Les Petite Academies*, 548 S.W.2d 847, 851 (Mo.App.1976).  There is no indication of bad faith or self-serving ambition in Ms. Jones' statement to Ms. Brooks that she intended to hang up in order to tell Mr. Newson that she wanted him to leave.  As such, that portion of the conversation falls within a valid hearsay exception.

▮ On the other hand, the segment of the testimony which refers to previous conversations between Ms. Jones and Ms. Brooks does constitute inadmissible hearsay.  "Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant."  *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981).  Hearsay is objectionable because the one making the statement is not under oath or subject to cross-examination.  *State v. Robinson*, 484 S.W.2d 186, 189 (Mo.1972).

▮ It was error for the trial court to have permitted Ms. Brooks to testify that Ms. Jones had already asked Mr. Newson to leave more than once.  The error was not so prejudicial as to mandate reversal, however, since the inadmissible statement was merely cumulative to other evidence that Ms. Jones was attempting to remove Mr. Newson from the house.  *See State v. Ousley*, 668 S.W.2d 643, 645 (Mo.App.1984).  The additional evidence consisted of the admissible testimony showing Ms. Jones' *present* intention to oust Mr. Newson on December 19, 1990, as well as testimony that Ms. Jones had packed Mr. Newson's bags.  From this evidence alone, a reasonable juror could easily conclude that Ms. Jones was in the process of ejecting Mr. Newson.  Therefore, the erroneously admitted testimony was inconsequential and could not have prejudiced Mr. Newson.[2]  The point is denied.

**2.**  Furthermore, a neighbor of Mr. Newson and Ms. Jones, Mr. Foster, witnessed an argument between the couple in which Mr. Newson threatened Ms. Jones.  Mr. Foster's testimony pertaining to this incident is not contested on appeal

and establishes the discord in the relationship of Ms. Jones and Mr. Newson as a possible murder motive for Mr. Newson.  The evidence from Mr. Foster of the potential motive is further support for finding that Mr. Newson was not prejudiced

### III.

In Mr. Newson's third and final point, he argues that the motion court erred in denying his Rule 29.15 motion, since his counsel was ineffective in failing to cross-examine the State's witness, Ms. Brooks, about the personal hostility she felt toward Mr. Newson. According to Mr. Newson, an effective cross-examination would have revealed the witness' bias and prejudice.

This court is limited to a determination of whether the trial court's findings of fact, conclusions of law and judgment are clearly erroneous. *State v. Collier,* 892 S.W.2d 686, 693 (Mo.App.1994); Rule 29.15(j). A finding or conclusion is clearly erroneous only if, after reviewing the entire record, the court has a definite and firm impression that a mistake has been made. *Collier,* 892 S.W.2d at 693.

To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his attorney failed to utilize the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) that the defendant was prejudiced thereby. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). If a defendant fails to satisfy one of the above prongs, the court need not consider the other prong. *Id.* Moreover, the defendant faces a heavy burden in challenging the competency of counsel. *Id.* There is a strong presumption that the allegedly ineffective actions of an attorney are skillful and diligent, in that they are presumed to constitute sound trial strategy. *Id.* at 858.

Mr. Newson claims that it was crucial for the jury to have been informed of Ms. Brooks' possible bias, since such bias would have discredited her testimony. He argues that Ms. Brooks established a motive for him to kill Ms. Jones, since Ms. Brooks testified that Ms. Jones had told her that she had asked Mr. Newson to move out. Following Ms. Brooks' direct examination, however, Mr. Newson's attorney elected not to conduct any cross-examination whatsoever.

At the evidentiary hearing, Mr. Newson's counsel explained that Ms. Brooks' "testimony was so damning in some of the things that she was intending to say," that counsel did not wish to elicit her comments. In particular, counsel was concerned about inadvertently strengthening the State's case by adducing evidence to establish the great frequency of contact between Ms. Brooks and Ms. Jones. "Subjects covered and the extent of cross-examination are matters of trial strategy and must be left to the judgment of counsel." *State v. Anderson,* 862 S.W.2d 425, 439 (Mo.App.1993). Point three is denied.

The judgment is affirmed.

All concur.

by the inadmissible portion of Ms. Brooks' testimony.