**STATE of Missouri, Respondent,**

v.

**Darren HARRIS, Appellant.**

**No. WD 52699.**

Missouri Court of Appeals,
Western District.

April 29, 1997

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant,

Jeremiah W. (Jay) Nixon, Attorney General, Gregory L. Barnes, Asst. Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and HANNA and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Darren Harris appeals his convictions following a jury trial for first degree murder, section 565.020, RSMo 1994, and armed criminal action, section 571.015, RSMo 1994, and sentences to concurrent terms of life imprisonment without parole and life imprisonment, respectively. He claims that the trial court abused its discretion in denying his motion for a mistrial based on a witness's unsolicited outburst. The judgment of convictions is affirmed.

Delzoria Mondaine saw two young men, Darren Harris and the victim, Robert Smith, arguing in the front yard of her house located at 7307 East 107th Street in Kansas City at approximately one o'clock in the afternoon of April 1, 1995. Mr. Smith was short and stocky; Mr. Harris was tall, light complected, and wearing a black, hooded sweatshirt. When she asked the men what was wrong, Mr. Smith claimed that Mr. Harris had a gun and was going to kill him. Mr. Harris denied having a gun and explained to Ms. Mondaine that Mr. Smith had stolen $200 from him. Ms. Mondaine then attempted to calm the men down.

Mr. Harris suddenly pulled out a handgun, and Mr. Smith started to run. Mr. Harris fired one shot into the air, and then shot Mr. Smith in the back. Mr. Smith fell to the ground shaking. Ms. Mondaine begged Mr. Harris not to shoot Mr. Smith again, but Mr. Harris stood over Mr. Smith and shot him several more times in the back of the head killing him. Mr. Harris then fled.

During this time, Latosha Austin and her mother, Linda Scott, were driving by Ms. Mondaine's house when they saw the two young men arguing. They pulled their car onto a side street and stopped to watch the argument. They witnessed a man wearing a black, hooded sweatshirt pull a handgun from the waistband of his pants and shoot the other man.

Earlier the same day, Mr. Harris was at a nearby park with friends, Harold Jones, Christopher Louis, and Michael Williams, when Mr. Harris learned that Mr. Smith was walking up 107th Street. Mr. Harris left the park and ran toward the area where Mr. Smith had been seen. Mr. Louis drove a car to the vicinity of Ms. Mondaine's front yard. Mr. Jones was a passenger in the vehicle. The two men saw the two men arguing in Ms. Mondaine's front yard. Mr. Louis tried to stop the car at the scene but the flow of traffic forced them to drive past the house. As Mr. Louis was attempting to return to the scene, the two men in the vehicle heard several gunshots. When they approached the house, they saw Mr. Harris standing over Mr. Smith. Mr. Harris then ran toward their car, but they refused to stop. Later, at Mr. Williams's house, Mr. Harris told them, "You didn't see nothing, you don't know nothing."

After the shooting, Ms. Mondaine was unable to identify the shooter from a videotaped lineup. At a deposition prior to trial, however, she identified Mr. Harris from a photo lineup as the man who shot Mr. Smith, and after initially choosing someone else, she positively identified the defendant from the videotaped lineup. Ms. Mondaine also identified Mr. Harris at trial as the shooter. Mr. Louis testified at trial that he noticed that

Mr. Harris had a handgun tucked in his pants before the shooting.

The jury convicted Mr. Harris of first degree murder and armed criminal action, and the trial court sentenced him to concurrent terms of life imprisonment without parole and life imprisonment, respectively. This appeal followed.

■ As his sole point on appeal, Mr. Harris claims that the trial court erred in denying his request for a mistrial following an unsolicited outburst from Ms. Mondaine during cross-examination. He claims that Ms. Mondaine's outburst prejudiced the jury against him and discouraged him from testifying on his own behalf.

Ms. Mondaine was questioned extensively during cross-examination about the identification of the shooter. After the videotaped lineup was played for the jury, the following exchange between defense counsel and Ms. Mondaine occurred:

Q. Ms. Mondaine, is that a true and accurate copy of the lineup which you saw?

A. The day you gave me the deposition?

Q. The day you watched it at the police department.

A. I don't remember.

Q. You don't remember if you saw all four of those individuals?

A. I do and I don't. I can see it all in my head. I mean, I feel like I am being victimized here. I did not kill anybody. They came into my yard and killed. He shot that boy in cold blooded murder in my yard. I did not commit a crime. Why do I have to sit here and let you persecute me when I didn't do anything wrong? I resent it. I'm an American citizen and I don't like this. He knows as well as I do that he committed the crime. I did not do it. He did and I begged and I pleaded with him to don't do it.

. THE COURT. Excuse me, we will take a five-minute break at this time.

A. He said that.

A. He's guilty. You know he's guilty. He did it and I begged him not to.

THE COURT. Court's in recess.

Defense counsel claimed that, as Ms. Mondaine was walking out of the courtroom past the jury box, she stated, "He shouldn't sit there and say nothing when he knows he did it." During the recess, defense counsel requested a mistrial based on Ms. Mondaine's unsolicited outbursts. The trial court denied the motion and received assurance from the prosecutor that she would keep Ms. Mondaine under control. The trial court then gave the following curative instruction to the jury:

THE COURT. Ladies and gentlemen of the jury, I want to instruct you that you must disregard the unsolicited responses of this witness just a few minutes ago before you retired. So I want you to disregard that and not consider it as part of this evidence in this case. Will all of you agree to do that for me?

(Jurors indicated in the affirmative.)

THE COURT. Is there anybody who will not do that?

(No response.)

THE COURT. Thank you very much. Let the record show that nobody indicated by raising their hand that they would not be willing to disregard that witness' unsolicited statements. Very well, call the witness back in, please.

After court was adjourned that evening, the trial court questioned three jurors in chambers to determine what they had heard Ms. Mondaine say as she walked out of the courtroom. Juror Miller replied:

She said it doesn't make any sense that you are sitting there pretending you didn't do it when you know you did it, and I know that you did it and this is all silliness and I am being persecuted and this isn't fair. I am an American citizen. I don't deserve to be treated like this.

The other jurors stated that they did not hear Ms. Mondaine say anything as she exited the courtroom. Mr. Harris's counsel again requested a mistrial, and the request was overruled.

■ A mistrial is a drastic remedy and should be employed only in extraordinary circumstances. *State v. Newson,* 898 S.W.2d

710, 714 (Mo.App.1995). Where an incident is so grievous that its prejudicial effect cannot be removed any other way, a mistrial is appropriate. *Id.* Because a trial court is in the best position to determine whether prejudice can be rectified by an action short of declaring a mistrial, the trial court has broad discretion in denying a mistrial and will only be reversed for an abuse of that discretion. *Id.* Where the evidence of a defendant's guilt is strong, it is less likely that the trial court will be found to have abused its discretion. *State v. Walls,* 911 S.W.2d 645, 647 (Mo.App. 1995).

■ Where a witness unexpectedly volunteers inadmissible information, the trial court determines what measures, if any, are necessary to cure the potential prejudice. *State v. Sanders,* 903 S.W.2d 234, 238 (Mo. App.1995); *Newson,* 898 S.W.2d at 714. Generally, prejudice may be removed by striking the improper testimony and instructing the jury to disregard it. *Sanders,* 903 S.W.2d at 238. If the trial court takes remedial action, rather than granting a mistrial, a reviewing court must simply determine whether the error was so prejudicial that the action of the trial court did not remove the prejudicial effect, as a matter of law. *Newson,* 898 S.W.2d at 714.

■ Ms. Mondaine's unsolicited trial statement expressed her opinion that Mr. Harris was guilty of shooting the victim because, as she testified, she saw him do it. She did not present any inadmissible evidence. The unsolicited and undesirable outburst was not so prejudicial as to make any curative action meaningless. The trial court determined that an instruction to the jury to disregard Ms. Mondaine's improper comments would cure the potential prejudicial effect of the witness's comments. The court solicited an affirmative commitment from the jury that it would follow the court's instruction. In the absence of a contrary showing, a jury is presumed to have followed the trial court's instruction. *Newson,* 898 S.W.2d at 714.

The court then questioned three jurors in chambers to determine what they had heard Ms. Mondaine say as she walked out of the courtroom. The court again solicited an affirmative commitment from the jurors that they would disregard any remarks they heard the witness make. The inquiry produced no indication that the jurors heard any comment regarding Mr. Harris's right to testify as Ms. Mondaine departed the courtroom.

■ Additionally, even if the unsolicited statement was prejudicial, the evidence of Mr. Harris's guilt is overwhelming. "The presumption of prejudice from the erroneous admission of evidence may be overcome where the evidence of guilt is so overwhelming as to eliminate any reasonable doubt that the defendant would have been found guilty without the erroneously admitted evidence." *State v. Troupe,* 863 S.W.2d 633, 636 (Mo. App. E.D.1993). Ms. Mondaine, who was present at the shooting, identified Mr. Harris as the killer. Two of Mr. Harris's friends testified that they saw Mr. Harris arguing with the victim, heard gunshots, and then saw Mr. Harris standing over the victim. Two passing motorists that witnessed the shooting gave a description of the shooter that matched that of Mr. Harris. Mr. Harris rejoined the friends he had been with shortly before the shooting, two of whom had seen him at the murder scene standing over the victim, and he told them, "You didn't see nothing. You don't know nothing."

Any prejudicial effect resulting from Ms. Mondaine's unsolicited outburst was removed as a matter of law by the overwhelming evidence of guilt and the trial court's instruction to the jury. The trial court did not abuse its discretion in refusing to grant Mr. Harris's request for a mistrial.

The judgment of convictions is affirmed.

All concur.